# EXHIBIT E

FILED
5/30/2024 7:19 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH05116
Calendar, 4
27913269

FILED DATE: 5/30/2024 7:19 PM    2024CH05116

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CDK GLOBAL, LLC<br><br>Plaintiff,<br><br>vs.<br><br>ASBURY AUTOMOTIVE GROUP, INC,<br><br>Defendants. | Case No. 2024CH05116 |

## COMPLAINT

Plaintiff, CDK Global, LLC ("CDK"), by its attorneys, Mayer Brown LLP, files this Complaint against Defendant, Asbury Automotive Group, Inc. ("Asbury"), and alleges as follows:

### INTRODUCTION

1. Plaintiff CDK is a global provider of integrated information technology and digital marketing solutions to the automotive retail industry. Defendant Asbury has a longstanding business relationship with CDK, under which CDK provides proprietary software and hardware solutions to Asbury's franchised automobile dealerships across the United States pursuant to multiyear agreements called Master Services Agreements ("MSAs"). CDK's product offerings include what is known in the automotive retail industry as a dealer management system, or "DMS," which is a set of proprietary software tools and database elements that automobile dealers use to manage core aspects of their business. CDK has been Asbury's primary DMS supplier since 2010.

2. The Parties entered into their current MSA in April 2019. Under the terms of the MSA, Asbury receives favorable pricing terms for DMS and other products and services compared to what CDK charges other customers, in recognition of the fact that Asbury has committed to purchase these services from CDK across its national footprint of dealerships.

3.      Asbury recently elected to extend the Parties' MSA through April 2025. In the letter notifying CDK of its decision to extend the MSA, Asbury wrote that "[w]e look forward to continue to work with CDK as a preferred vendor under the Agreement." In reliance on Asbury's decision to extend the MSA, CDK invested in making improvements to Asbury's DMS and related services that CDK provides to Asbury under the Parties' agreement.

4.      However, unbeknownst to CDK, Asbury was negotiating in secret with another DMS provider, Tekion Corp. According to recent public statements, Asbury has been in talks with Tekion for more than two years—long before Asbury elected to renew the MSA. In February 2024, Asbury announced that it was switching to Tekion Corp's DMS pursuant to a "pilot program" beginning later this year, with a company-wide rollout to follow in January 2025.

5.      Asbury has issued written notices to CDK purporting to cancel services at certain dealerships that are being transitioned to Tekion Corp. However, Asbury does not have the right to cancel these services unilaterally until the MSA—which was recently extended at Asbury's election—expires in April 2025. Asbury's conduct is therefore in breach of the MSA.

6.      ███████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Asbury's conduct also constitutes unlawful tampering with a computer system in violation of 720 ILCS 5/17-51.

7. CDK now brings this action against Asbury for breach of the MSA, for violations of 720 ILCS 5/17-51, and for a declaratory judgment to protect CDK's rights under the MSA throughout the remaining term of the agreement.

## PARTIES

8. CDK is a Delaware limited liability company. Until 2023, CDK's corporate headquarters was located at 1950 Hassell Road, Hoffman Estates, Illinois 60169. CDK continues to maintain its largest corporate office in Hoffman Estates, Illinois.

9. Asbury Automotive Group, Inc. is Delaware corporation with its principal place of business located at 2905 Premiere Parkway, Suite 300, Duluth Georgia, 30097. Asbury owns and operates over 150 automobile dealerships and collision centers across the United States.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Asbury because this lawsuit arises out of and relates to Asbury's contacts with the State of Illinois. Specifically, Asbury engaged CDK, an Illinois company, to provide the services that are subject to this lawsuit. The Parties' MSA was negotiated and executed from within the State of Illinois. CDK's performance of the Parties' MSA occurred within the State of Illinois. Further, as detailed below, Asbury's wrongful conduct includes the use of third party software to access CDK's proprietary DMS systems and network, which are maintained in the State of Illinois. These acts provide sufficient minimum contacts to submit Asbury to the exercise of jurisdiction by Illinois courts.

11. Venue in this Court is proper pursuant to Section 5/2-101 of the Illinois Code of Civil Procedure because (a) parts of the transaction out of which this cause of action arises took

3

FILED DATE: 5/30/2024 7:19 PM   2024CH05116

place in Cook County, Illinois, including negotiations related to the MSA, which is central to this action; and (b) all defendants in this action are nonresidents of the state.

## FACTUAL ALLEGATIONS

**A.     The Parties' Master Services Agreement**

12.     The Parties entered into their most recent MSA in 2019. The MSA was executed on behalf of CDK by Dan Flynn, then the President of CDK North America. When he executed the MSA, Mr. Flynn was part of CDK's executive team in Hoffman Estates, Illinois.

13.     Under the terms of the MSA, CDK licenses certain proprietary software to numerous Asbury dealerships, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14.     The MSA is a valid and enforceable contract between the Parties, and CDK has performed and continues to perform all of its obligations under the MSA.

15.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16.     Asbury's DMS is cloud-based, meaning that the software and database elements used to the provide the DMS are maintained by CDK on host servers at data centers located in Chicago, Illinois and Las Vegas, Nevada.

17.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████

18. The initial term of the MSA was five years: April 22, 2019 to April 22, 2024. ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████ By electing to extend the MSA, Asbury obtained an additional year of rights and benefits arising under the Parties' agreement. In reliance on Asbury's decision to extend the MSA for at least another year, CDK has made and continues to make certain investments to improve the Products and Services, which CDK provides to Asbury Clients at no additional cost. As one example, CDK is in the process of upgrading all Client locations to CDK Unify, a single cloud-based entry point for all CDK Products and Services.

19. ██████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████

20. ██████████████████████████████████████████████
██████████████████████████████████████████████████████████

5

21. ███████████████████████████████████████

### B. Asbury's Wrongful Conduct

22. Notwithstanding its decision to extend the MSA for another one-year term, on February 4, 2024, Asbury provided written notice to CDK purporting to "cancel all services" at four Asbury Clients—Nalley Honda Union City, Nalley Lexus Galleria, Nalley Lexus Roswell, and Nalley Toyota Roswell (the "Nalley Dealerships")—effective December 31, 2024.

23. CDK has since learned that Asbury intends to transition the Nalley Dealerships to Tekion Corp, another DMS provider. Asbury's CEO, David Hult, stated publicly during a February 8, 2024 earnings call that Asbury intends to use the Nalley Dealerships to establish a "pilot" program with Tekion Corp, with a company-wide conversion to Tekion Corp planned to begin in January 2025 (Mr. Hult: "We anticipate [in] January rolling out all our stores").

24. The MSA does not give Asbury the right to cancel certain Products and Services, including Core Applications and Services, during the remaining term of the MSA, which Asbury in its sole discretion recently elected to extend. ████████████████████████████

████████████████████████████████████████████████

6

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████

25.     ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████ Mr. Hult stated publicly during Asbury's February 8, 2024 earnings call that Asbury has been in discussions with Tekion Corp "for over [two] years" and "working together to overcome obstacles and what both of us would need to do on our end to create the relationship." ████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████ Despite this, Asbury elected to extend the MSA in order to continue reaping the substantial benefits it obtains under the MSA for another year. Asbury even stated in its notice to CDK regarding the contract extension that "[w]e look forward to continuing to work with CDK as a preferred vendor under the Agreement." However, Asbury has failed to honor its end of the bargain and has repudiated its obligations arising under the MSA by purporting to cancel all CDK services at certain Clients so that those Clients can be transitioned to another DMS provider. Asbury's conduct is in breach of the MSA.

26.     When CDK objected to Asbury's conduct, Asbury's Chief Information Officer Barry Cohen claimed that the MSA was nothing more than "a general (enterprise-wide) license granted by CDK to Asbury and its dealerships," under which Asbury was free "to discontinue (or add or change) use of the CDK products at any Asbury location." Asbury's position is contradicted

by the express terms of the MSA regarding each Party's rights to cancel Products and Services during the remaining term of the MSA.

27. Asbury has never retracted its position or withdrawn its purported cancellation of all CDK services at the Nalley Dealerships. Asbury has unequivocally repudiated its obligations arising under the MSA as to these Clients and, based upon the public statements of its CEO, Asbury intends to breach its obligations arising under the MSA with respect to other Clients.

28. Asbury has demanded that CDK transfer all operational data stored in the DMS pertaining to the Nalley Dealerships to Tekion Corp. In the ordinary course of business, when a dealership customer reaches the end of its contract term, CDK will typically facilitate one transfer of data that resides in the DMS to the dealer or its new DMS vendor, provided that the dealer is in compliance with its contractual obligations, is current on all of its accounts, and has satisfied its financial obligations through the end of its contract term. CDK is under no duty to provide this service for any Asbury Client prior to the expiration of the MSA or while Asbury is in breach of its duties and commitments arising under the MSA.

29. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

30. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



31. ███████████████████████████████████████

32. ███████████████████████████████████████

33. ███████████████████████████████████████

34. ███████████████████████████████████████

## COUNT I – BREACH OF CONTRACT

35. CDK incorporates all preceding paragraphs as if fully set forth herein.

36. The Parties' MSA includes a New York choice-of-law provision.

37. Under New York law, the elements of a cause of action for breach of contract are: (1) the existence of a valid contract between the parties; (2) the non-breaching party's performance of its obligations arising under the contract; (3) the breaching party's failure to perform its obligations arising under the contract; and (4) damages. The elements of a cause of action for breach of contract under Illinois law are materially similar.

38. The MSA is a valid and enforceable contract between the Parties, and CDK has fully performed all of its obligations arising under the MSA.

39. Asbury breached the MSA by using third party software to access the DMS through the conduct described above.

40. Asbury breached the MSA by purporting to cancel Products and Services at certain Asbury Clients when the MSA does not permit cancellation at Asbury's unilateral discretion.

41. CDK has suffered damages from Asbury's breaches of the MSA in the form of lost revenue and profits, harm to CDK's system and degraded system performance, as well as the cost of detecting, monitoring, and remediating Asbury's improper access to the DMS through the use of third party software, in an amount to be proven at trial.

## COUNT II – BREACH OF CONTRACT (ANTICIPATORY BREACH)

42. CDK incorporates all preceding paragraphs as if fully set forth herein.

43. Under New York law, if a party repudiates its obligations arising under a contract, it commits an anticipatory breach of contract that is immediately actionable. The elements of a cause of action for anticipatory breach of contract under Illinois law are materially similar.

44. Asbury's written notice to CDK purporting to "cancel all services" at the Nalley Dealerships prior to the expiration of the MSA as well as the public statements of Asbury's CEO that Asbury plans to transition "all our stores" to Tekion Corp beginning in January 2025 are clear

FILED DATE: 5/30/2024 7:19 PM   2024CH05116

and unequivocal pronouncements that Asbury intends to forego performance of its obligations arising under the MSA related to the purchase of Products and Services.

45. In subsequent interactions with CDK, including in correspondence from Asbury's Chief Information Officer dated February 20, 2024, Asbury has refused to retract its statements and actions repudiating its obligations arising under the MSA.

46. CDK is and will continue to be damaged by Asbury's repudiation of the MSA through lost revenue and profits, in an amount to be proven at trial.

### COUNT III – VIOLATION OF 720 ILCS 5/17-51

47. CDK incorporates all preceding paragraphs as if fully set forth herein.

48. The Illinois Computer Crime Prevention Law ("CCPL") prohibits "computer tampering," which includes knowingly and without authorization accessing, or causing to be accessed, a "computer" or a "computer network" and obtaining data or services. 720 ILCS 5/17-51. A "computer" includes any "device that accepts, processes, stores, retrieves, or outputs data and includes, but is not limited to, auxiliary storage, including cloud-based networks of remote services hosted on the Internet, and telecommunications devices connected to computers." 720 ILCS 5/17-0.5. CDK's DMS is a computer for purposes of the CCPL.

49. The CCPL authorizes a private right of action for violations of 720 ILCS 5/17-51(a)(4), which provides that "[a] person commits computer tampering when he or she knowingly and without the authorization of a computer's owner or in excess of the authority granted to him or her . . . [i]nserts or attempts to insert a program into a computer or computer program knowing or having reason to know that such program contains information or commands that will or may: (A) damage or destroy that computer, or any other computer subsequently accessing or being accessed by that computer; (B) alter, delete, or remove a computer program or data from that computer, or any other computer program or data in a computer subsequently accessing or being

11

accessed by that computer; or (C) cause loss to the users of that computer or the users of a computer which accesses or which is accessed by such program[.]" 720 ILCS 5/17-51(c).

50. The CCPL defines a "computer program" or "program" as "a series of coded instructions or statements in a form acceptable to a computer which causes the computer to process data and supply the results of the data processing." 720 ILCS 5/17-0.5.

51. Through the conduct described above, Asbury knowingly inserted a computer program into a computer system maintained by CDK ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

52. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

53. Asbury's conduct was without CDK's authority and, to the contrary, was expressly prohibited under the terms of the Parties' MSA.

54. CDK has incurred losses in the form of harm to CDK's computer system and degraded system performance, as well as the costs of investigating, detecting, monitoring, and remediating Asbury's improper access to the DMS through the use of third party software.

55. CDK is therefore entitled to appropriate relief, including its reasonable attorney's fees and costs of suit as the prevailing party.

## COUNT IV – DECLARATORY JUDGMENT

56. CDK incorporates all preceding paragraphs as if fully set forth herein.

57. Pursuant to 735 ILCS 5/2-701, Illinois courts may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested.

58. An actual controversy has arisen between CDK and Asbury concerning their rights and obligations arising under the MSA, including with respect to ███████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████ Further, a controversy has arisen between the Parties ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████

59. CDK has a tangible legal interest in the resolution of these issues in its favor, while Asbury has an adverse interest in their resolution.

60. A judicial declaration regarding the contractual rights and obligations contained in the MSA will aid in the termination of the Parties' controversy.

**PRAYER FOR RELIEF**

WHEREFORE, CDK requests that this Court enter judgment in its favor and against Defendant Asbury Automotive Group, Inc. for:

a. Compensatory damages in an amount in excess of $50,000;

b. Injunctive and equitable relief prohibiting Defendant from continuing to violate the Parties' MSA and engage in unauthorized access to CDK's computer systems and network through the use of third party software;

FILED DATE: 5/30/2024 7:19 PM   2024CH05116

  c. A declaratory judgment of the Parties' rights and obligations under the MSA;

  d. An award of CDK's costs of suit and reasonable attorney's fees; and

  e. Any and all additional relief as the Court may determine in its discretion to be just and proper.

## JURY DEMAND

CDK hereby demands a trial by jury on all issues so triable.

Dated: May 30, 2024    Respectfully submitted,

    By: /b/Britt Miller
      Britt M. Miller
      bmiller@mayerbrown.com
      Matthew D. Provance
      mprovance@mayerbrown.com
      MAYER BROWN LLP
      71 South Wacker Drive
      Chicago, Illinois  60606-4637
      Firm No. 43948
      Telephone:  (312) 782-0600
      Facsimile:  (312) 701-7711

      *Attorneys for Plaintiff CDK Global, LLC*

FILED DATE: 5/30/2024 7:19 PM   2024CH05116

# EXHIBIT A
# (FILED UNDER SEAL)