VINEET BHATIA (Admitted Pro Hac Vice)
vbhatia@susmangodfrey.com
SHAWN RAYMOND (Admitted Pro Hac Vice)
sraymond@susmangodfrey.com
DANIEL WILSON (Admitted Pro Hac Vice)
dwilson@susmangodfrey.com
MEREDITH R. HARRISON (Admitted Pro Hac Vice)
mharrison@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

EVE LEVIN (Admitted Pro Hac Vice)
elevin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Plaintiff CDK Global, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TEKION CORP., a Delaware corporation<br><br>*Plaintiff,*<br><br>vs.<br><br>CDK GLOBAL, LLC, a Delaware limited liability company<br><br>*Defendant.* | Case No. 3:24-cv-08879-JSC<br><br>**DEFENDANT CDK GLOBAL, LLC's NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   June 11, 2026<br>Time:   10:00 a.m.<br>Place:  San Francisco Courthouse<br>           Courtroom 8 – 19th Floor<br>           450 Golden Gate Avenue, San<br>           Francisco, CA 94102 |

CDK Global, LLC's Notice of Motion, Motion, and Memorandum of Points
and Authorities in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT .................. 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORDANDUM OF POINTS AND AUTHORITIES .............................................. 1

INTRODUCTION ........................................................................................................ 1

SUMMARY OF UNDISPUTED MATERIAL FACTS ............................................... 5

    I.     The DMS Market ................................................................................ 5

    II.    Tekion's Significant Growth in the DMS Market ............................. 6

         A.     Tekion Is Succeeding in a Highly Competitive DMS Market ........... 7

         B.     Tekion Struggles to Onboard Its Backlog of DMS Customers ........... 7

    III.    CDK's Market Share ......................................................................... 8

         A.     Tekion's 60% Market-Share Allegation ........................................... 8

         B.     Discovery Bears Out that the 60% Market Share Allegation is Baseless ........................................................................................... 9

         C.     The Unrebutted Record Demonstrates CDK's Share is Below 40% and Falling ...................................................................................... 10

LEGAL STANDARD ................................................................................................. 12

ARGUMENT ............................................................................................................. 12

    I.     Tekion Cannot Show Monopoly Power. ........................................... 12

         A.     CDK's Market Share Is Indisputably Insufficient to Show Monopoly Power. ......................................................................... 13

         B.     Market Structure Confirms That CDK Lacks Monopoly Power. .............. 17

    II.    Tekion Cannot Show a Dangerous Probability of Acquiring Monopoly Power. ........................................................................................... 21

CONCLUSION .......................................................................................................... 23

ii

CDK Global, LLC's Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
2022 WL 980791 (W.D. Tex. Mar. 31, 2022) .......................................................................... 15

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
2010 WL 11478992 (N.D. Cal. July 21, 2010)........................................................................ 14

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.
Publications, Inc.*,
108 F.3d 1147 (9th Cir. 1997)........................................................................................... 21, 22

*Am. Tobacco Co. v. United States*,
328 U.S. 781 (1946)................................................................................................................ 14

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
958 F. Supp. 895 (S.D.N.Y.), aff'd, 130 F.3d 1101 (2d Cir. 1997)........................................ 18

*Authenticom, Inc. v. CDK Glob., LLC*,
874 F.3d 1019 (7th Cir. 2017)................................................................................................... 1

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
613 F. Supp. 3d 1308 (S.D. Cal. 2020)................................................................................... 14

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)................................................................................................................ 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................................ 12

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025)......................................................................................... 13, 21

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
520 F. Supp. 2d 1199 (C.D. Cal. 2007), aff'd, 322 F. App'x 569 (9th Cir.
2009) ....................................................................................................................................... 19

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,
2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) ............................................................... 19, 20

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022)................................................................................................. 13

CDK Global, LLC's Notice of Motion, Motion, and Memorandum of Points
and Authorities in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

*Fed. Trade Comm'n v. Meta Platforms, Inc.*,
  811 F. Supp. 3d 67 (D.D.C. 2025) ..................................................................... 16

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
  895 F.2d 1417 (9th Cir. 1990).......................................................................... 19

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997).......................................................................... 13

*In re Dealer Management Systems Antitrust Litig.*,
  581 F. Supp. 3d 1029 (N.D. Ill. 2022) .............................................................. 17

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  680 F. Supp. 3d 919 (N.D. Ill. 2023) ................................................................. 1

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
  481 F. Supp. 965 (N.D. Cal. 1979) ................................................................... 19

*In re Super Premium Ice Cream Distribution Antitrust Litig.*,
  691 F. Supp. 1262 (N.D. Cal. 1988) ................................................................. 19

*Indiana Grocery, Inc. v. Super Valu Stores*,
  864 F.2d 1409 (7th Cir. 1989)........................................................................... 23

*Los Angeles Land Co. v. Brunswick Corp.*,
  6 F.3d 1422 (9th Cir. 1993)............................................................................... 20

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
  164 F.4th 710 (9th Cir. 2026)............................................................. 13, 18, 20, 21

*MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*,
  205 F.3d 1351 (9th Cir. 1999)...................................................................... 14, 22

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
  642 F. App'x 665 (9th Cir. 2016) ...................................................................... 14

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995)........................................................................ *passim*

*Tekion Corp. v. CDK Glob., LLC*,
  2025 WL 1939870 (N.D. Cal. July 15, 2025)............................................... 4, 8, 9

*Thurman Indus., Inc. v. Pay'N Pak Stores, Inc.*,
  709 F. Supp. 985 (W.D. Wash. 1987)................................................................ 19

*Transamerica Computer Co. v. Int'l Bus. Machines Corp.*,
  698 F.2d 1377 (9th Cir. 1983)........................................................................... 19

CDK Global, LLC's Notice of Motion, Motion, and Memorandum of Points
and Authorities in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
512 F.2d 1264 (9th Cir. 1975) .............................................................................................. 2

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
7 F.3d 986 (11th Cir. 1993) ................................................................................................ 15

*United States v. Aluminum Co. of Am.*,
148 F.2d 416 (2d Cir. 1945) ................................................................................................. 2

*United States v. E. I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) ........................................................................................................... 16

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) ...................................................................................................... 13, 15

*United States v. Syufy Enters.*,
903 F.2d 659 (9th Cir. 1990) ......................................................................................... 15, 19

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
190 F.3d 974 (9th Cir. 1999) .............................................................................................. 15

**Statutes**

Sherman Act Section 2 ................................................................................................... 6, 8, 12

**Rules**

FED. R. CIV. P. 56(a) ........................................................................................................... 12

**Other Authorities**

AREEDA & HOVENKAMP ¶ 535a (5th ed. 2021) ................................................................ 14

Automotive News, 2026 Top 150 Dealership Groups,
https://www.autonews.com/retail/top-150-dealership-groups/2026/ (last
accessed April 24, 2026) .................................................................................................. 4, 8

John Huetter, *Automotive News,* https://www.autonews.com/retail/an-lithia-
pinewood-seez-us-dms-0407/ (Apr. 7, 2025) ..................................................................... 18

Tekion, *Tekion Secures $200M from Dragoneer Investment Group*,
https://tekion.com/blog/tekion-secures-$200-million-in-growth-capital-from-
dragoneer-investment-group (July 15, 2024) ....................................................................... 7

CDK Global, LLC's Notice of Motion, Motion, and Memorandum of Points
and Authorities in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

## NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

PLEASE TAKE NOTICE that, on June 11, 2026, at 10:00 a.m., before the Honorable Jacqueline S. Corley, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Courtroom 8, 19th Floor, Defendant CDK Global, LLC ("CDK") will and hereby does move for an order granting summary judgment to CDK on Counts I and II of Plaintiff Tekion's ("Plaintiff" or "Tekion") complaint (ECF 1) ("Complaint"). The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

### STATEMENT OF ISSUES TO BE DECIDED

Whether CDK is entitled to summary judgment on Count I and Count II of Tekion's Complaint because there is no material dispute of fact that CDK does not possess monopoly power and there is no dangerous probability of CDK achieving such monopoly power.

### MEMORDANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Tekion claims that CDK unlawfully monopolized or attempted to monopolize the U.S. franchise dealer management systems market (the "DMS market"). Courts have been down this road before. In 2017, the Seventh Circuit squarely addressed CDK's DMS market position and concluded that CDK is not a monopolist. *Authenticom, Inc. v. CDK Glob., LLC*, 874 F.3d 1019, 1025 (7th Cir. 2017). The court found that CDK held "over 40%" of the DMS market and Reynolds, another competitor, held "around 30%," market shares that fell well short of monopoly power. *Id.* at 1022. That litigation was consolidated into multidistrict litigation, and in 2023, the district court found it "undisputed" at summary judgment that CDK and Reynolds "together control 70 percent" of the market. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 941 (N.D. Ill. 2023).

What has happened since that case was filed? Competition has only intensified. Two new entrants, including Tekion, have entered the market. And CDK's share has declined. Today, CDK's market share on a rooftop basis (industry parlance for an individual dealership location) stands at ███████████████████████████████████ Judge Learned Hand famously declared could

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

"certainly … not" constitute a monopoly—a proposition the Ninth Circuit has reminded district courts to heed, *see Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1274 (9th Cir. 1975) (quoting *United States v. Aluminum Co. of Am.* ("*Alcoa*"), 148 F.2d 416, 424 (2d Cir. 1945))—and is well below the 50% threshold the Ninth Circuit has called "presumptively insufficient" to show monopoly power. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995).

Tekion, the plaintiff alleging anticompetitive harm, has enjoyed substantial market share growth that, though presumably good for business, is fatal to its antitrust claims. It has grown from a startup to a company now valued at more than $4 billion, making it one of the most highly valued entrants ever in the automotive retail space. Since launching its dealer management system ("DMS") in 2020, total revenue has grown from approximately ▮▮▮▮▮ to over ▮▮▮▮▮ By January 2026, it had expanded its DMS to ▮▮▮ live rooftops, including those of Asbury Automotive Group, one of the nation's largest dealership chains, which it won from CDK. Tekion has grown so quickly that its internal documents ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮

Tekion's CEO regularly boasts about Tekion's market ascendance, publicly and privately. At industry conferences, he touts that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ In October 2025, he reflected in a public "fireside chat": "It's a good problem. We have too much of demand now. So we are working hard to see how we are going to gracefully scale and take care of that demand." Ex. 11 at 7:9–12. In the same interview, he touted Tekion's rapidly growing DMS market share: "Core DMS, a little bit over 1,500. Growing very fast. We're onboarding … around 80 … rooftops, on the DMS side … a month …. There's a lot, lot of work to do for us to scale … better, faster, more gracefully." *Id.* at 7:21–8:9, 11:9–11. Privately, his assessment is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Unless otherwise noted, all exhibit citations refer to exhibits attached to the Declaration of Eve Levin filed herewith.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

████████████████████████████████████████████████████

████████████████████████████████████

That, it should go without saying, is not what a market under the boot of a monopolist looks like.

Indeed, the DMS market bears no resemblance to one dominated by a monopolist. There are at least 11 active DMS competitors. No single participant currently has more than 40% market share. Yet Tekion insists CDK is a monopolist wielding the power to exclude competition and control prices in the DMS market—claims Tekion makes in its Complaint even though its General Counsel and outside counsel had, immediately prior to filing suit, circulated multiple market studies that established that CDK's market share fell well short of monopoly levels.

Despite Tekion's market success, Tekion's litigation theory is that a series of mostly trivial delays in CDK's data transfers for customers moving from CDK to Tekion is a scheme to exclude competition. Never mind that from January 1, 2021, through December 31, 2025, including the period of supposedly exclusionary conduct, CDK completed ██ successful data transfers to Tekion and nearly ██ to all DMS competitors. Ex. 3 ("Rowland Decl.") ¶ 5. If this is an exclusionary scheme, it is a half-baked one indeed.

The foundation for Tekion's implausible theory is its claim that CDK holds "approximately 60%" of the DMS market "by revenue." Dkt. No. 1 ("Compl.") ¶¶ 2, 30, 67. That allegation was suspect from the outset—not only because it conflicted with every other public analysis, including the judicial determinations described above that were reached after fiercely contested litigation in the MDL, and an FTC complaint *attached to Tekion's Complaint* that placed CDK's share much lower,[2] *see* Compl. Ex. A at ¶¶ 8, 33—but also because Tekion *could not possibly have had a basis for claiming to know CDK's market share by revenue*, as nearly every competitor is a private company that does not publicly report DMS revenue.

In support of its dubious allegation, Tekion's Complaint cited a single source: a passing

---

[2] The redacted FTC complaint that Tekion attached to its Complaint projected CDK's market share would rise to only 47% *if* the contemplated merger with Auto/Mate were consummated, which it was not. *See* Compl. Ex. A ¶ 31. The unredacted complaint shows the FTC estimated CDK's pre-merger market share at ███. Ex. 12 (FTC Complaint) at ¶ 33.

3

reference in an *Automotive News* article to an estimate by industry consultant Matt Gillrie, while conveniently ignoring the comprehensive DMS market studies that Tekion and its counsel had at their fingertips. But Gillrie said nothing about market share "by revenue" nor his methodology. Tekion nonetheless assured the Court at the motion to dismiss stage that it possessed other facts substantiating its 60% by revenue claim. Ex. 10 at 70:21–24. The Court therefore accepted the 60% allegation as plausible, citing the *Automotive News* article and the fact that five of the six largest public dealer groups used CDK. *Tekion Corp. v. CDK Glob., LLC*, 2025 WL 1939870, at *4 (N.D. Cal. July 15, 2025). (That fact is no longer true: Asbury—the 5th largest dealer group in the US[3]— is transitioning its rooftops from CDK to Tekion, and Lithia Motors—the country's largest dealer group—announced that it is switching from CDK to Pinewood.AI, another new DMS entrant.)

From January 2021 to March 2026, CDK's share by rooftop ranged from a high of ███ to a low of ███, with the balance of the market comprising Tekion and at least ten other active DMS competitors. Even if Tekion could manufacture an artificial dispute about the precise figure— and it cannot—CDK's market share is beyond dispute below 50%. Nor can Tekion pivot to a revenue-based measure to create a material dispute: such a measure would be inappropriate, and Tekion has not obtained necessary revenue data from competitors in discovery—a result of its own strategic choice not to enforce its subpoenas against competitors. Tekion admitted under oath it "does not presently know the market share, 'by total DMS revenue for franchise dealers' for 'every Market Participant in the Franchise DMS Market.'" Ex. 7 at 3:18-20; 5:20-22. And as for Matt Gillrie, the industry consultant Tekion originally cited for the 60% estimate, he disavowed the figure unequivocally under oath. At his deposition, Gillrie testified that "revenue had nothing to do

Discovery has now predictably revealed Tekion's allegation to be baseless, the 60% figure wildly inflated, and Tekion's representation that it possesses other facts to back it up untrue. Not a scintilla of evidence supports the 60% figure or anything like it. Rather, the unrebutted record demonstrates that CDK's market share is below the 50% threshold the Ninth Circuit has called "presumptively insufficient" to show monopoly power. *Rebel Oil*, 51 F.3d at 1438.

---

[3] *Automotive News*, 2026 Top 150 Dealership Groups, https://www.autonews.com/retail/top-150-dealership-groups/2026/ (last accessed April 24, 2026).

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

with" his analysis and that his firm "really do[es]n't know what the market share [is]." Ex. 9 ("Gillrie Dep.") at 63:2–3, 139:5.

Those undisputed facts compel summary judgment. A market share below 50% is "presumptively insufficient" to establish monopoly power. *Rebel Oil*, 51 F.3d at 1438. And Tekion cannot overcome that presumption by pointing to market structure—quite the opposite. There are no legally cognizable barriers to entry or expansion, as Tekion's rapid growth proves. Cloud-based technology and artificial intelligence have *lowered* capital requirements for competing in this market, which is why another competitor entered the DMS market within the past two years. Dealerships can and do switch DMS providers with regularity; the evidence shows Tekion winning dealerships from every major incumbent, including CDK. And facing intensifying competition, CDK has competed vigorously on price. That is the opposite of what one would expect from a firm possessing monopoly power or dangerously close to obtaining it.

CDK does not possess monopoly power, and there is no dangerous probability it will attain it. The Court should grant summary judgment on Counts I and II of Tekion's Complaint.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

### I.    The DMS Market

The relevant market is the U.S. market for dealer management systems for franchise automobile dealerships. Dkt. 1 ("Compl.") ¶ 22. CDK does not contest that definition for purposes of this motion. "Franchise" is a term of art distinguished from "independent" dealers; the former hold manufacturer franchises, typically operate at larger scale, and typically sell mostly new rather than used cars. A dealer management system is "mission-critical business software that serves as the backbone of the dealer's information technology systems," used to manage "nearly every aspect of the business." Compl. ¶ 24; *see also* Ex. 1. ("Snail Rpt.") ¶ 14. Virtually every franchise dealer uses a DMS. The DMS market comprises over 18,000 rooftops. Compl. ¶¶ 1, 63; Dkt. 53 ("Answer") ¶¶ 1, 63; Snail Rpt. ¶¶ 47–48.

In this litigation, Tekion identified at least ten competitors it admits participate in that market: CDK, Reynolds and Reynolds, Tekion, Dealertrack (owned by Cox Automotive), Autosoft,

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

DealerBuilt, Dominion DMS, Auto/Mate, Quorum, and PBS Systems. Ex. 5 at 4:19-22 (Interrogatory No. 1 Response). Within the last two years, an additional competitor, Pinewood.AI, entered, and *the country's largest dealership group* has announced it will transition to Pinewood.AI from CDK. Snail Rpt. ¶¶ 35, 36, 59, 66. Tekion and its largest investors describe the DMS market internally and to prospective investors as ▌▌▌▌▌▌▌▌▌▌▌▌▌▌—a characterization inconsistent with monopoly. Ex. 17 (TEKION00339055) at 00339056; *see also Rebel Oil*, 51 F.3d at 1443 ("[O]ligopol[y] … cannot support a claim of monopolization under the Sherman Act.").

## II.   Tekion's Significant Growth in the DMS Market

Jay Vijayan, a former Chief Information Officer of Tesla, Inc., founded Tekion in 2016 to build a SaaS model cloud-native dealer management system. Compl. ¶ 32. In 2019, Tekion launched pilots of its DMS, the Automotive Retail Cloud ("ARC"), and commercial implementations began by 2020. Ex. 18 (TEKION00020469) at -00020476.

Since then, Tekion's trajectory has been explosive. ARC live rooftops grew from ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Tekion's revenue growth has been just as astonishing. Annual revenue grew from approximately ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Its ARC-only revenue— accepting Tekion's own self-serving allocation in its discovery responses—▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌ Ex. 7 at 6:12–14. On the back of this success, Tekion commanded a

6

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

valuation exceeding $4 billion in its last funding round in 2024, a figure that does not capture its growth since.[4]

### A.    Tekion Is Succeeding in a Highly Competitive DMS Market

████████████████████████████████████████████

That increased competition has occasioned vigorous price competition. Tekion's board materials summarize the dynamic succinctly: ████████████████████████ CDK's response to increased competition has been to lower prices, negotiate more with dealers on standard agreement terms, and invest hundreds of millions of dollars in its product. *Id.*

### B.    Tekion Struggles to Onboard Its Backlog of DMS Customers

From ARC's launch, the rate-limiting factor to Tekion's DMS growth has been its onboarding capacity. ████████████████████████

[4] Tekion, *Tekion Secures $200M from Dragoneer Investment Group,* https://tekion.com/blog/tekion-secures-$200-million-in-growth-capital-from-dragoneer-investment-group (July 15, 2024).

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC



Tekion's market share will grow further. ███████████████████

███████████████████

## III.    CDK's Market Share

### A.        Tekion's 60% Market-Share Allegation

When Tekion filed suit in December 2024, it alleged monopolization and attempted monopolization under Section 2 of the Sherman Act, based on an alleged 60% market share "by revenue" in the DMS market. CDK moved to dismiss, arguing that Tekion's 60% market share allegation was both legally insufficient and factually implausible. The sole basis for the allegation was a passing reference in an *Automotive News* article to an "estimate" by Matt Gillrie, CEO of a DMS consulting firm, that "CDK remains the leader with about 60 percent of the market." CDK pointed out that Gillrie's offhand comment provided no methodology, no factual basis, and no reference to revenue as the basis for the estimate. Dkt. 23 ("Mot. to Dismiss") at 12. Tekion's entire monopoly theory thus rested on an apparent misunderstanding of a single consultant's unexplained estimate in a trade publication and its convenient ignorance of other available market studies.

The Court denied CDK's motion. *Tekion Corp. v. CDK Global, LLC*, 2025 WL 1939870 (N.D. Cal. July 15, 2025). The Court found Tekion's 60% allegation plausible at the pleading stage, reasoning that "monopoly power within a relevant market need not 'be pled with specificity'" and that "at the pleading stage 'a rough estimate of the defendant's market share is sufficient' to state a claim." *Id.* at *4 (citations omitted). As to Gillrie, the Court credited Tekion's allegations that "the 60% market share figure is based on statements from 'a DMS consulting firm that helps dealerships with major vendors.'" *Id.* The Court allowed the case to proceed so Tekion could substantiate (or fail to substantiate) the market share allegation on which its monopoly theory depended.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

**B.      Discovery Bears Out that the 60% Market Share Allegation is Baseless**

The industry consultant Tekion originally cited for the 60% market share estimate, Matt Gillrie of The Gillrie Institute, was deposed and unequivocally disavowed the allegation. Gillrie testified:

- That "revenue had nothing to do with" his analysis and that his estimate was not based on market share "by revenue" in any sense. Ex. 9. at 63:2–3.

- That he "was not limiting [his] analysis to CDK['s] share of franchise dealerships in the United States"—meaning his estimate, whatever its basis, was not limited to the relevant market Tekion has alleged. *Id.* at 62:7–22.

- That his firm "really do[es]n't know what the market share [is]" and has no data or methodology to calculate it. *Id.* at 139:5.

Nor has any other evidence of 60% market share (by revenue or any other metric) materialized during discovery. CDK served three rounds of supplemental interrogatory responses over six months attempting to identify any source for Tekion's 60% allegation. █████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████—data Tekion chose not to obtain through timely enforcement of its subpoenas. █████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Ultimately, Tekion admitted it ███████████████████

████████████████████████████████████████ In response to CDK's request that Tekion admit it was "not aware of any Independent Third-Party Market Analysis" establishing 60% market share by revenue, Tekion conceded it "is not presently aware of any Independent Third-Party Market Analysis that measures market shares of the DMS market for franchise dealerships by … revenue."[5] Ex. 8 at 5:8-10.

---

[5] In the same response, it also claimed the reason it had no third-party analyses of market share by revenue was because such metrics are non-public. Ex. 8 at 5:8-10. It turns out that statement was false as well. Discovery revealed that ███████████████████████████████████████████████████████████████████████████████████████████████████ *See infra.*

9

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

What's more, other third-party analyses Tekion solicited or received *shortly before filing suit* confirmed that its 60% allegation was baseless and that measured by revenue or rooftop, CDK's share fell well below that mark. Less than a month before filing its Complaint, Tekion's general counsel, Aysswarra Murthi, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Five days later, Ms. Murthi ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ which she described as ████████████████ ████████████████████████████████ Ms. Murthi similarly ████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████

Despite the complete absence of competent evidence supporting the 60% figure and abundant evidence to the contrary, Tekion continues to stand by its market share allegation.

### C. The Unrebutted Record Demonstrates CDK's Share is Below 40% and Falling

The data produced in discovery show that even though CDK remains the market leader, its market share has declined in recent years. The effect of increased competition has been a measurable shift in CDK's market position. CDK's share by rooftops—an appropriate measure, as explained below—██████████████████████████████████████████████████████ ████████████████████. As illustrated below, ████████████████████████ ████████████████████████████████████████████████████████████

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

These figures do not account for CDK customers who have signed up with a new DMS provider but have not yet transitioned all of their rooftops. CDK recently lost two of its largest customers: In 2024, Asbury Automotive Group signed an agreement to switch from CDK to Tekion, targeting late 2026 or early 2027 to complete the rollout; and in 2025, Lithia—CDK's largest customer by rooftops, with over 300 U.S. locations—announced it would switch to Pinewood.AI. Snail Rpt. ¶¶ 50, 66. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rowland Decl. ¶¶ 7–10. After these transitions and others, CDK's market share will fall further still. Snail Rpt. ¶ 49.

Dr. Snail's analysis demonstrates substantial customer churn—customers can and do switch DMS providers. CDK wins and loses hundreds of rooftops each year. In 2024, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Churn has increased in recent years: ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮.

CDK has lost more rooftops to Tekion than to any other competitor in each year since 2023, with losses to Tekion accounting for more than ▮▮ of CDK's competitive losses over this period.

11

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

Snail Rpt. ¶ 63; Snail Rpt. Ex. 8.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, the nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "Assertions in expert affidavits do not automatically create a genuine issue of material fact." *Rebel Oil,* 51 F.3d at 1440. Rather, the Court is "obligated to look at the record to determine whether, in light of any undisputed facts, the inferences to be drawn from the expert's affidavits are reasonable. 'When the expert opinion is not supported by sufficient facts to validate it in the eyes of the law or when indisputable record facts contradict or otherwise render the opinion unreasonable,' summary judgment is appropriate." *Id.* (internal citations omitted).

## ARGUMENT

Tekion's monopolization and attempted monopolization claims fail because CDK lacks monopoly power, and there is no dangerous probability it will acquire such power. Tekion cannot prove monopoly power directly—through evidence of supracompetitive pricing, restricted output, or diminished quality—because the undisputed evidence shows the opposite. Nor can Tekion prove monopoly power indirectly, because CDK's market share falls well below the 50% threshold that is "presumptively insufficient" to establish monopoly power, and because no cognizable barriers to entry or expansion create a triable issue of fact. The same evidence that defeats Tekion's monopolization claim forecloses its attempt claim: without significant barriers, there can be no "dangerous probability" of achieving monopoly power—and the intensifying competition demonstrated by Tekion's meteoric rise proves no such barriers exist.

## I.    Tekion Cannot Show Monopoly Power.

Section 2 of the Sherman Act prohibits monopolization—that is, both "the possession of monopoly power in the relevant market" and the "willful acquisition or maintenance of that

12

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

monopoly power" through anticompetitive conduct, as opposed to growth through "superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).[6] "Monopoly power" is the power to "control prices or exclude competition." *Id.* at 571. Direct evidence of such power—supracompetitive pricing, restricted output, or decreased quality in the relevant market, *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1069 (9th Cir. 2025)—is rarely available. As a result, plaintiffs typically proceed by circumstantial proof: showing the defendant possesses a dominant share of a well-defined relevant market, protected by barriers to entry sufficient to prevent the market from self-correcting. *Rebel Oil*, 51 F.3d at 1439. Here, the DMS market is self-correcting: new competitors have entered, existing competitors have expanded, price competition exists, and customers switch providers with regularity.

Because Tekion cannot prove monopoly power directly, it must prove it circumstantially by establishing a dominant market share in a well-defined relevant market, together with evidence of barriers to entry sufficient to maintain that share. *See Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 724 (9th Cir. 2026). Tekion cannot satisfy either requirement.

**A.    CDK's Market Share Is Indisputably Insufficient to Show Monopoly Power.**

Courts have long recognized that market share provides the essential foundation for assessing monopoly power, for it is through market dominance that a firm acquires the ability to raise prices or exclude competition. "Market share is perhaps the 'most important factor to consider' when determining whether a defendant has monopoly power." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022).

Courts generally require a 65% market share to establish a prima facie case of market power, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997), and a market share below 50% is "presumptively insufficient" to establish monopoly power. *Rebel Oil*, 51 F.3d

---

[6] This motion focuses on CDK's lack of monopoly power in the relevant market. Though not the subject of this motion, CDK disputes other elements of Tekion's claims, for example, that CDK's conduct constitutes the unlawful acquisition or maintenance of any monopoly or establishes any anticompetitive conduct that could constitute attempted monopolization.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

at 1438; *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 205 F.3d 1351, 1351 (9th Cir. 1999) ("It is unlikely … that a 50% share of market, without more, can support a finding of monopoly power.").

Consistent with those principles, district courts in this Circuit generally grant summary judgment when plaintiffs fail to present evidence of a market share above 50%. *See, e.g.*, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1333 (S.D. Cal. 2020) (declining to "infer monopoly power or sufficient market power" where defendant "did not have a market share of even 50%"), aff'd, 9 F.4th 1102 (9th Cir. 2021); *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL 11478992, at *6 (N.D. Cal. July 21, 2010) (finding "no genuine issue of material fact" as to monopolization where "Plaintiffs[] failed to present any evidence that Defendant['s] share of the relevant market exceeded the minimum threshold of 50% necessary for a monopolization claim" and therefore could not "overcome the presumption of insufficiency under *Rebel Oil*"), aff'd, 525 F. App'x 612 (9th Cir. 2013); *accord Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 642 F. App'x 665, 667 (9th Cir. 2016) (applying the presumption of insufficiency on a motion to dismiss and citing *Rebel Oil*).

By any measure supported by the record, CDK's market share falls well below 50%—indeed, below 40%. Consider one appropriate measure: market share on a unit, or "rooftop," basis. A "rooftop" is the industry's standard unit and represents one physical dealership location, regardless of size or revenue. Units sold (here, rooftops) are presumptively the proper measure. 2B AREEDA & HOVENKAMP ¶ 535a (5th ed. 2021) ("In most cases, … units are presumptively the better measure if they provide a satisfactory common denominator" and "substitutions occur in a one-to-one ratio."); *accord* U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines § 5.2 (2010) ("In cases where one unit of a low-priced product can substitute for one unit of a higher-priced product, unit sales may measure competitive significance better than revenues."); *cf., e.g., Am. Tobacco Co. v. United States*, 328 U.S. 781, 794 (1946) (calculating market share by units of cigarettes produced). A revenue-based measure is likely to overstate the market significance of higher-priced DMS options: by way of illustration, a customer choosing between a $6,000 Sub-Zero refrigerator and a $2,000 GE does not choose between one Sub-Zero and three GEs—the

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

customer chooses one or the other. "In that case, a sale of one GE displaces the sale of one Sub-Zero, or vice versa, and output is best measured by units rather than dollars." 2B AREEDA & HOVENKAMP ¶ 535a.

The same logic applies here. When a dealership switches DMS providers, it switches from one system to another, not one system to three. Tekion's Complaint belabors this point: "[t]he actual switch to a new DMS happens in an instant, usually at the stroke of midnight, after which the new DMS becomes *the sole system of record* for the dealership." Compl. ¶ 10 (emphasis added). Measuring market share by revenue would therefore systematically distort the competitive picture, overstating the significance of higher-priced providers and understating the competitive constraint imposed by lower-priced alternatives. *Accord Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 2022 WL 980791, at *8 (W.D. Tex. Mar. 31, 2022).

Measured by rooftops—a more appropriate metric than revenue,[7] and one supported by record evidence (unlike revenue)—CDK's market share is undisputedly below 50%. Indeed, it is below 40%. That figure is well below the range at which courts have generally found monopoly power. *Cf. U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 1000 (11th Cir. 1993) ("[W]e have discovered no cases in which a court found the existence of actual monopoly established by a bare majority share of the market.").

Moreover, CDK's DMS market share by rooftops has decreased in recent years. Snail Rpt. ¶¶ 49–51. A firm with less than a majority share that has lost market share to an aggressive competitor does not possess "the power to control prices or exclude competition." *Grinnell*, 384 U.S. at 571; *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 976 (9th Cir. 1999) (summary judgment appropriate even with "high market share" where competitors had "aggressively entered the market during the relevant time period"); *United States v. Syufy Enters.*, 903 F.2d 659, 665 (9th Cir. 1990) ("bypass[ing] as surplusage the hundreds of pages of expert and

---

[7] Indeed, measured by dealership groups rather than individual rooftops—an arguably more informative metric because dealership groups typically employ the same DMS across all locations— ██████████████████████████████████ But for summary judgment purposes, the critical point is that even the higher rooftop-based figure falls well below the presumptive threshold.

15

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

lay testimony" and "focus[ing] instead only on a single—to our minds conclusive—item…."—the entrance of robust new competitors); *Fed. Trade Comm'n v. Meta Platforms, Inc.*, 811 F. Supp. 3d 67, 123 (D.D.C. 2025) (granting summary judgment based on recent entrance of new competitors because "[i]f '[m]onopoly power is the power to control prices or exclude competition,' then that power seems to have slipped from [defendant's] grasp." (quoting *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956))).

Even on Tekion's preferred metric, revenue, the result is the same. As discussed below, the only available evidence establishes CDK's share by revenue does not exceed 50%—a fact that Tekion is attempting to dispute by obtaining competitors' internal revenue data. *See, e.g.*, Ex. 7 at 7:23-26; 8:11-13. But Tekion has not obtained that data. Had Tekion developed the record by obtaining competitors' revenue data, those data would have confirmed what the rooftop data reflects—that CDK's share by any metric is well below 50%. But Tekion made a strategic choice not to enforce its subpoenas against Reynolds & Reynolds, Dealertrack, or any other DMS competitor for revenue data until the last month of third-party document discovery. While Tekion scrambles to fill this gap, it finds itself at summary judgment with no competent evidence of market shares by revenue. Tekion therefore cannot credibly attempt to delay summary judgment by claiming its experts will perform alchemy to turn competitors' revenue data, which it lacks, into a triable issue of fact. *Cf. Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them."). Having chosen not to develop the evidentiary record on the metric it chose, Tekion cannot now manufacture a genuine dispute through speculation.

Even setting aside Tekion's failure to develop the record, the third-party analyses that are available confirm CDK's market share falls below 50%, even by revenue. Independent third-party research confirms what the rooftop data show. Global Insight Services ("GIS"), a market research firm providing DMS industry intelligence, determined CDK had ▮ of U.S. franchise automotive DMS revenue in 2025—and that CDK's share has declined since Tekion entered the market, while Tekion and other competitors have gained share over the past decade. Snail Rpt.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

¶¶ 49–54 & Exs. 1 & 2. This independent analysis corroborates the rooftop-based data and confirms CDK's share falls below 50% on any metric. █████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

None of the third-party sources Tekion cited for its 60% claim in discovery responses creates a material dispute of fact. To the extent relevant, they directly contradict Tekion's claim and support CDK's. Tekion's discovery responses first point to a 2022 presentation by CDK's majority shareholder Brookfield estimating CDK's share at ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ And Tekion cites *In re Dealer Management Systems Antitrust Litig.*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022), which—in tension with Tekion's claims—observed that CDK and Reynolds *together* hold approximately 75% market share by rooftop, and in any event is now years out of date. None supports Tekion, let alone creates a material dispute that CDK's market share exceeds the 50% threshold.

### B.   Market Structure Confirms That CDK Lacks Monopoly Power.

The absence of cognizable barriers to entry and expansion independently defeats Tekion's monopolization claim. Even if CDK possessed a dominant market share—it does not—Tekion could not establish monopoly power without showing "significant" barriers "capable of constraining the normal operation of the market to the extent that the problem is unlikely to be self-correcting." *Rebel Oil*, 51 F.3d at 1439.

"'A mere showing of substantial or even dominant market share alone' does not suffice." *Malheur Forest Fairness*, 164 F.4th at 727 (quoting *Rebel Oil*, 51 F.3d at 1439). Even a firm with

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

100% market share does not possess monopoly power unless the plaintiff can "show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Id.* The Ninth Circuit has identified the "main sources of entry barriers" as: "(1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; [and] (4) capital market evaluations imposing higher capital costs on new entrants."[8] *Rebel Oil*, 51 F.3d at 1439. Critically, to sustain a finding of monopoly power, "entry barriers must be significant—they must be capable of constraining the normal operation of the market to the extent that the problem is unlikely to be self-correcting." *Id.* Tekion cannot satisfy that standard.

Before turning to specific categories, a threshold point bears emphasis: Tekion's own entry and rapid rise is itself powerful, unrebutted evidence that no cognizable barriers exist and that CDK lacks power to exclude competition. If barriers to entry were truly "significant" and "capable of constraining the normal operation of the market," Tekion would not have ███████████ ████████████████████████████ What's more, Tekion is not even the sole new entrant. Pinewood.AI—a DMS provider Tekion did not deem worthy of naming as a competitor when responding to CDK's interrogatories—has also successfully entered the market in recent years.[9]

"Unrebutted evidence that actual competitors have entered the market is a strong indicator that [the defendant] lacks market power." *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 904 (S.D.N.Y.), aff'd, 130 F.3d 1101 (2d Cir. 1997). A plaintiff "must show that new competitors are 'barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price.'" *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2018 WL 10247483, at *7 (N.D. Cal. Sept. 24, 2018) (quoting *Rebel Oil*, 51 F.3d at 1439). "If such barriers do not exist, nothing prevents a newcomer (or an existing competitor) from effectively challenging an emerging monopoly, thereby undercutting the would-be monopolist's ability to

---

[8] *Rebel Oil* also recognizes that "in some situations[,] economies of scale" may be a relevant barrier to entry; no such barrier is relevant here. 51 F.3d at 1439.

[9] John Huetter, *Automotive News*, "Pinewood takes steps toward broader U.S. sales as 2025 Lithia DMS pilot nears," https://www.autonews.com/retail/an-lithia-pinewood-seez-us-dms-0407/ (Apr. 7, 2025).

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

domineer the market and hinder competition." *Id.* (citing *Syufy Enter.*, 903 F.2d at 664).

Courts thus routinely grant summary judgment when new entrants have emerged during the period at issue. *See, e.g.*, *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1209 (C.D. Cal. 2007), aff'd, 322 F. App'x 569 (9th Cir. 2009) (less than 40% market share and recent competitive entrants into market each independently sufficient to entitle defendant to summary judgment on monopoly power); *Thurman Indus., Inc. v. Pay'N Pak Stores, Inc.*, 709 F. Supp. 985, 991 (W.D. Wash. 1987) (finding no monopoly power because "Plaintiff itself has entered the market and has experienced growth over the time period at issue."); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 982 (N.D. Cal. 1979), aff'd sub nom. *Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 698 F.2d 1377 (9th Cir. 1983) ("IBM's market share (if the market had been properly defined) was below 57 percent and falling. Entry was easy for anyone with a good idea and the courage to exploit it, and new entrants, along with the old, grew and prospered."); *In re Super Premium Ice Cream Distribution Antitrust Litig.*, 691 F. Supp. 1262, 1269 (N.D. Cal. 1988) (granting summary judgment because "there is extensive interbrand competition, and … such competition has been increasing"), aff'd sub nom. *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 895 F.2d 1417 (9th Cir. 1990).

Of course, the Ninth Circuit has recognized that a new entrant's mere presence is not *always* sufficient to preclude finding barriers to entry. Specifically, "[i]f the output or capacity of the new entrant is insufficient to take significant business away from the predator, they are unlikely to represent a challenge to the predator's market power." *Rebel Oil.*, 51 F.3d at 1440. But precisely the opposite is true here: █████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████ and has won one of CDK's largest customers, Asbury. Snail Rpt. ¶¶ 48–51, 55, 59–65. ███████████████ ██████████████████████████████████████████████

If CDK possessed power to exclude competitors, one would expect it to exercise that power against its aggressive new competitor.

19

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

Against this backdrop, Tekion cannot raise a triable issue of fact as to any barrier to entry recognized under Ninth Circuit precedent.

First, there are no legal or regulatory barriers. Government approval is not needed to enter the DMS market, and Tekion cannot contend otherwise. Nor do OEM certifications qualify as "legal license requirements" within the meaning of *Rebel Oil*—they are private business arrangements, not government-imposed barriers. More importantly, they do not bar entry or impose costs on new entrants that incumbents do not face. Every DMS provider, CDK included, must obtain and maintain OEM certifications. And Tekion has successfully obtained certifications from virtually every major OEM, ██████████████████████████████████ ████████████████████████████████████ A "barrier" that a new entrant has already surmounted—and surmounted ████████████████—is no barrier at all.

Second, CDK does not control any essential or proprietary resource. The inputs to build a DMS are available in the open market, and Tekion (and Pinewood.AI) accessed those same inputs to build its competing product.

Third, capital costs do not constitute a barrier to entry. "The fact that entering a market requires a large capital investment, without more, does not constitute a barrier to entry: 'a new [market] entrant is disadvantaged only to the extent that he must pay more to attract those funds than would an established firm.'" *DeSoto Cab*, 2018 WL 10247483, at *8 (citation omitted); *see also Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1428 (9th Cir. 1993) (finding no significant entry barriers where there was no evidence that "capital costs for new entrants and incumbents in the market differ, or that it is any more difficult for new entrants to obtain financing than incumbents"). Recently, in *Malheur Forest Fairness*, the Ninth Circuit held substantial start-up costs insufficient because they failed to show such costs "were not incurred by incumbent firms but [were] incurred by new entrants" or that the costs "deter entry while permitting [the defendant] to earn monopoly returns." 164 F.4th at 727.

Tekion has made no such showing. Advances in artificial intelligence promise to lower development costs. ██████████████████████████████████

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

█████████████████████████████ And cloud-based technology has lowered the upfront costs of building a DMS. Unlike legacy providers such as CDK, which must maintain on-premise infrastructure, new entrants can leverage scalable cloud platforms. Snail Rpt. ¶¶ 15–16; Compl. ¶¶ 7, 33. And even if high absolute capital costs could establish a barrier to entry—which they cannot—Tekion's success demonstrates they are surmountable. A barrier a new entrant can overcome in just a few years while capturing nearly 10% of the market and winning customers from every major incumbent does not "constrain[] the normal operation of the market" or prevent it from "self-correcting." *Rebel Oil*, 51 F.3d at 1439.

Fourth, entrenched buyer preferences. Brand recognition and customer loyalty do not, standing alone, constitute barriers to entry under Ninth Circuit precedent. *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997). Rather, entrenched buyer preferences must impose additional costs on new entrants to be a cognizable barrier—for example, through network effects. *Cf. CoStar Grp.*, 150 F.4th at 1071. There are no such barriers here.

While some dealers may historically have been reluctant to switch DMS providers, undisputed evidence shows that reluctance is clearly surmountable and is not the kind of "significant" barrier preventing the market from "self-correcting." *Rebel Oil*, 51 F.3d at 1439. Dr. Snail's analysis ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Tekion's growth and high industry churn rates irrefutably demonstrate that whatever consumer hesitancy to switch providers may exist, it is insufficient to "constrain[] the normal operation of the market." *Rebel Oil*, 51 F.3d at 1439.

## II.   Tekion Cannot Show a Dangerous Probability of Acquiring Monopoly Power.

Tekion's attempted monopolization claim likewise fails. To prevail, a plaintiff "must show,

21

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

inter alia, that there is a dangerous probability that [the defendant] will achieve monopoly power." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1153 (9th Cir. 1997). But like actual monopoly power, a dangerous probability of achieving monopoly power cannot exist absent barriers to entry or expansion. *MRO*, 205 F.3d at 1351. For the same reasons explained above, no cognizable barriers to entry or expansion exist. Here, too, the absence of barriers, borne out by Tekion's growth, precludes Tekion's claim. Undisputed evidence shows CDK's market share is not only well below 50%, but that it has declined throughout the period of alleged anticompetitive conduct while Tekion's has increased. Tekion's interrogatory responses admit it "does not presently know" CDK's share by revenue, yet rooftop data—which Tekion cannot dispute—shows CDK losing share to Tekion and other competitors. A firm whose share has declined in the face of vigorous competition from new entrants is not plausibly on the verge of achieving monopoly power. *See supra* at 18–20.

*Rebel Oil* confirms summary judgment is warranted even where market share exceeds the threshold courts recognize as plausible for attempted monopolization, and even where genuine disputes exist as to entry barriers. There, the Ninth Circuit acknowledged that the quantum of market share required for an attempt claim is lower than for actual monopolization, and held that 44% market share is "sufficient as a matter of law to support a finding of market power, *if* entry barriers are high and competitors are unable to expand their output in response to supracompetitive pricing." *Rebel Oil*, 51 F.3d at 1438 (emphasis added). Despite recognizing this lower threshold, and despite finding genuine issues of material fact as to entry barriers, the Ninth Circuit nonetheless affirmed summary judgment against the attempted monopolization claim. *Id.* at 1439–43. The court did so because undisputed evidence of competitive expansion precluded any inference that the defendant was dangerously close to obtaining the power to control prices or exclude competition. *See id.* Specifically, the court identified "undisputed" evidence that two competitors had recently "expanded their operations." *Id.* at 1441–42. The court concluded such evidence "contradicts" any inference that the defendant was "reasonably close to controlling" the market, even as it acknowledged *both* sufficient market share *and* material disputes on barriers to entry. *Id.* at 1442.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

As the court explained, "[i]f a firm has not obtained that power and is not reasonably close to obtaining it, 'it matters little that high barriers to entry exist to help that firm maintain a monopoly power it could never achieve.'" *Id.* at 1441 (quoting *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1415 (7th Cir. 1989)). Because the undisputed record showed competitors actively expanding and taking business, plaintiff "failed to produce sufficient evidence to support a finding that [defendant] is dangerously close to obtaining the power to monopolize the market." *Id.*

*Rebel Oil* compels summary judgment here. CDK's share is not 44%, as in *Rebel Oil*—████ ████ As previously explained, there are *no* cognizable barriers to entry or expansion, unlike in that market. And unlike in *Rebel Oil*, where competitive expansion came from firms acquiring the assets of exiting rivals, expansion here reflects something more probative still: rivals winning customers directly from the alleged monopolist. Tekion grew from a startup ████ ████ capturing customers from every major incumbent, ████ ████. Pinewood.AI entered the market. This undisputed evidence of competitive expansion "contradict[s]" any inference that CDK is dangerously close to achieving monopoly power—precisely the showing that defeated the attempt claim in *Rebel Oil*.

Summary judgment is warranted on attempted monopolization for the same reasons it was warranted in *Rebel Oil*: undisputed structural evidence—competitors successfully taking customers and expanding market presence—conclusively negates any "dangerous probability" of achieving monopoly power. Because the unrebutted record shows an absence of barriers sufficient to show a dangerous probability of CDK constraining "the normal operation of the market," *Rebel Oil*, 51 F.3d at 1439, the claim fails.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in favor of CDK on Counts I and II of Tekion's Complaint.

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC

Dated: April 24, 2026

**SUSMAN GODFREY L.L.P.**

By: */s/ Vineet Bhatia*
VINEET BHATIA (Admitted Pro Hac Vice)
SHAWN RAYMOND (Admitted Pro Hac Vice)
DANIEL WILSON (Admitted Pro Hac Vice)
MEREDITH R. HARRISON (Admitted Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com
dwilson@susmangodfrey.com
mharrison@susmangodfrey.com

JESSE-JUSTIN CUEVAS (SBN 307611)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
jcuevas@susmangodfrey.com

EVE LEVIN (Admitted Pro Hac Vice)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
elevin@susmangodfrey.com

*Attorneys for Plaintiff CDK Global, LLC*

CDK Global, LLC's Memorandum of Points and Authorities
in Support of its Motion for Partial Summary Judgment
Case No. 3:24-cv-008879-JSC