VINEET BHATIA (Admitted Pro Hac Vice)
vbhatia@susmangodfrey.com
SHAWN RAYMOND (Admitted Pro Hac Vice)
sraymond@susmangodfrey.com
DANIEL WILSON (Admitted Pro Hac Vice)
dwilson@susmangodfrey.com
MEREDITH R. HARRISON (Admitted Pro Hac Vice)
mharrison@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

EVE LEVIN (Admitted Pro Hac Vice)
elevin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
*Attorneys for Defendant CDK Global, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TEKION CORP., a Delaware corporation<br><br>*Plaintiff,*<br><br>vs.<br><br>CDK GLOBAL, LLC, a Delaware limited liability company<br><br>*Defendant.* | Case No. 3:24-cv-08879-JSC<br><br>**DEFENDANT CDK GLOBAL, LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS**<br><br>Date:  June 25, 2026<br>Time:  10:00AM<br>Place:  San Francisco Courthouse<br>Courtroom 8 – 19th Floor<br>450 Golden Gate Avenue, San Francisco, CA 94102 |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR SANCTIONS.................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

BACKGROUND .................................................................................................6

I.    Tekion Based Its 60% Market Share Allegation on a Single Article, Added a "By Revenue" Embellishment, and Then Misrepresented its Evidence to This Court. .................................................................................................6

II.    Discovery Confirmed That the 60% Market Share Allegation Is Baseless and Affirmatively Rebutted by Materials Tekion Possessed and Reviewed Shortly Before Filing Its Complaint. .................................................................7

    A.    Matthew Gillrie Disavowed Tekion's Interpretation of His Statement and Confirmed He Does Not Know CDK's Market Share. .................................................................................................7

    B.    Tekion Is Unable to Identify Any Basis for Its 60% Market Share Allegation Through Four Rounds of Interrogatory Responses.................9

    C.    Document Discovery Confirms That No Support Exists for Tekion's 60%-by-Revenue Claim and That Tekion Knew As Much When It Filed Its Complaint. .................................................12

        1.    Tekion Solicited and Considered Market Studies That Affirmatively Disproved its Claim in the Lead Up to Filing Its Complaint. .................................................12

        2.    Tekion's RFA Responses Admit That No Factual Basis Exists for Its 60% Market Allegation While Misrepresenting the Contrary Information It Reviewed Before Filing the Complaint. .................................................13

        3.    Despite Being Put on Notice, Tekion Continues to Re-Assert the 60% Market Share Allegation. .................................................14

LEGAL STANDARD .................................................................................................15

ARGUMENT.................................................................................................16

I.    Tekion Violated Rule 11(b)(3) by Making and Advocating for Factual Contentions Without Evidentiary Support.................................................16

    A.    Tekion Failed to Conduct a Reasonable Pre-Filing Inquiry Into the Accuracy of Its Baseless 60% Market Share Allegation. .................16

    B.    Tekion Violated Its Continuing Duty Under Rule 11 to Withdraw Baseless Allegations. .................................................18

II.    Tekion's Discovery Responses Violate Rule 26(g)(1)(B).................................................19

III.    Tekion's Pattern of Misconduct Warrants Sanctions Under the Court's Inherent Authority. .................................................20

IV.    Sanctions Including Dismissal Are Warranted to Deter Tekion's Misconduct and Compensate CDK for Its Prejudice.................................................22

CONCLUSION.................................................................................................24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Authenticom, Inc. v. CDK Global, LLC,*
874 F.3d 1019 (7th Cir. 2017) ......................................................................................6

*Bunnell v. Haghighi,*
183 F. Supp. 3d 364 (E.D.N.Y. 2016) ..........................................................................18

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991)........................................................................................................22

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2002) ................................................................................15, 16

*Englebrick v. Worthington Indus., Inc.,*
944 F. Supp. 2d 899 (C.D. Cal. 2013), aff'd, 620 F. App'x 564 (9th Cir. 2015)........15, 20, 22

*Fink v. Gomez,*
239 F.3d 989 (9th Cir. 2001) ...................................................................................15, 20

*Galin v. Hamada,*
283 F. Supp. 3d 189 (S.D.N.Y. 2017), aff'd, 753 F. App'x 3 (2d Cir. 2018) ..........................18

*In re Dealer Management Systems Antitrust Litigation,*
581 F. Supp. 3d 1029 (N.D. Ill. 2022)........................................................................11

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
680 F. Supp. 3d 919 (N.D. Ill. 2023).............................................................................6

*In re Est. of Taplin,*
641 B.R. 236 (Bankr. E.D. Cal. 2022)..........................................................................18

*In re LeGrand,*
638 B.R. 151 (Bankr. E.D. Cal. 2022)..........................................................................18

*Kinney v. Bridge,*
2017 WL 492832 (N.D. Cal. Feb. 7, 2017) ...............................................................18

*Kinney v. Nob Hill Grill,*
710 F. App'x 783 (9th Cir. 2018) ................................................................................18

*Malautea v. Suzuki Motor Co.,*
987 F.2d 1536 (11th Cir. 1993) ...................................................................................15

*W.V. ex rel. N.V. v. Encinitas Union Sch. Dist.*,
289 F.R.D. 308 (S.D. Cal. 2012) ........................................................................16

*Watkins v. Infosys*,
2015 WL 4493440 (W.D. Wash. July 23, 2015), aff'd, 724 F. App'x 520 (9th
Cir. 2017) ........................................................................................................20, 22

*Willis v. City of Oakland*,
231 F.R.D. 597 (N.D. Cal. 2005)..........................................................................15

**Rules**

Fed. R. Civ. P. 11................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................16

Fed. R. Civ. P. 26................................................................................................*passim*

iii

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

PLEASE TAKE NOTICE that, on June 25, 2026, at 10:00AM, before the Honorable Jacqueline S. Corley, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Courtroom 8, 19th Floor, Defendant CDK Global, LLC ("CDK") will and hereby does move for an order for sanctions against Plaintiff Tekion Corp. ("Tekion") pursuant to Federal Rules of Civil Procedure 11 and 26 and this Court's inherent authority. The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Tekion violated Rule 11(b)(3) by making and maintaining factual contentions in its Complaint and thereafter without evidentiary support; whether Tekion violated Rule 26(g) by certifying discovery responses without conducting a reasonable inquiry; and whether Tekion's pattern of willful, improper conduct warrants sanctions under this Court's inherent authority.

## MEMORANDUM OF POINTS AND AUTHORITIES

Tekion's case is premised on a baseless allegation. That allegation—that "[b]y revenue, CDK has a 60% share of [the] DMS market for franchise dealerships … in the United States," Compl. ¶ 30—is the sole predicate for Tekion's claim that CDK possesses monopoly power. But as Tekion well knew, that allegation was baseless when Tekion made it, when Tekion later advocated for it before this Court, and when Tekion still later reiterated it through no fewer than four rounds of interrogatory responses and supplements. And the evidence developed since this litigation began—including the deposition of Tekion's sole cited source for the 60% market share allegation, Tekion's discovery responses, and third-party market analyses Tekion and its outside counsel reviewed shortly before filing the Complaint—proves that Tekion knew this claim was baseless from the outset and yet continued to press it. Tekion thereafter continued to make that allegation in sworn discovery responses while concealing contrary evidence in still other discovery responses. Tekion's seventeen-month pattern of misconduct, which has forced CDK to expend immense resources defending this meritless suit, warrants sanctions under Federal Rules of Civil Procedure

1

11 and 26 and this Court's inherent authority.

Tekion's 60% allegation is a fabrication—a number selected not because it reflects market reality, but because it crosses the threshold that Tekion hoped might allow its monopolization claim to survive a motion to dismiss (which it did) and therefore permit broad discovery into a competitor's most sensitive business information. Tekion's sole cited source for its 60% allegation is an *Automotive News* article quoting industry analyst Matthew Gillrie. Dkt. 1 ("Compl.") ¶ 29. But Gillrie's estimate on its face did not support the allegation as pleaded: it never mentions revenue, provides no methodology, and does not say whether the estimate refers to U.S. franchise dealerships or the broader North American market. Ex. 15 ("*Automotive News* Art. (04/10/2024)") at -00514888. In the lead up to filing its Complaint, Tekion solicited, possessed, reviewed, and deliberately ignored ██████████████████████████████████████ ████████████████████████████████, instead anchoring its Complaint to Gillrie's offhand estimate. And Tekion failed to do any due diligence to confirm the truth or reliability of Gillrie's supposed statement.

Worse still, Gillrie unequivocally disavowed Tekion's "by revenue" embellishment and walked back the *Automotive News* estimate in sworn testimony given on February 23, 2026. Gillrie's deposition confirmed what a reasonable inquiry (meaning, at a minimum, reading the article) would have revealed before Tekion filed its Complaint: that revenue "had nothing to do with" his estimate, and that Gillrie "really do[es]n't know what the market share [is]." Ex. 1 ("Gillrie Dep. Tr.") at 62:23–63-3; 139:3–5.

Even setting aside the unjustifiable reliance on Gillrie, Tekion's 60% figure is flatly contradicted by every comprehensive market analysis in the record, including those Tekion and its counsel solicited, received, and reviewed prior to filing the Complaint. Those analyses placed CDK's market share materially lower. And to this day, Tekion has not produced a single document—*not one*—backing up the number it chose to plead and re-assert in interrogatory response after interrogatory response.

For example: ██████████████████████████████ ████████████████████████, the metric Tekion used in its Complaint. ████████

2

█ Tekion's general counsel Aysswarya Murthi received and reviewed ███████ less than a month before filing the Complaint, calling it ████████████████████████ Ex. 3 at -01256227. And Tekion's co-founder and COO, Guru Sankararaman, forwarded it further still, saying it had ██████████████████ Ex. 22 at -00813870. A February 2024 ████████ study—prepared by one of Tekion's main investors— ████████████████ ███████████. Ex. 4 at -01360311. Ms. Murthi also reviewed this in the lead up to filing. *Id.* ████████████████████████████████████████████████████ █████—again, mere weeks before filing the Complaint—████████████████████████ ████████████████████████. Ex. 5 at -01174085. Not one of these analyses that Tekion possessed prior to filing suit approaches 60%, much less supports the 60% "by revenue" characterization Tekion pleaded. In each instance, Tekion shared the studies with Tekion's outside counsel representing Tekion in this matter. Ex. 6 ("Privilege Log") at refs. 4, 5, 7, 8, 11, 22. And tellingly there is *no* evidence in the record that Tekion or its outside counsel reviewed any material *supporting* its allegation (as opposed to the multiple sources it consulted that *disproved* its allegation).

Tekion's discovery responses compound its misconduct. CDK asked Tekion to admit that it was "not aware of any Independent Third-Party Market Analysis that states that CDK has a 60% or greater share of the DMS market for franchise dealerships by revenue." Ex. 7 ("CDK First RFAs") at 5:1–3. Tekion answered that it is "not presently aware of *any* Independent Third-Party Market Analysis that measures market shares of the DMS market for franchise dealerships *by any non-public metric, including revenue.*" Ex. 8 ("Tekion First RFA Resps.") at 5:8–10. (emphasis added). By so admitting, Tekion concedes it has no third-party source supporting its 60% allegation. But in other critical respects, the "admission" is also false. Tekion had at its fingertips, and reviewed shortly before filing the Complaint, ████████████████████████████ ██████████████. The problem for Tekion is not (as its RFA response claimed) that it lacked any revenue-based analysis. The problem is that the revenue-based analysis it possessed and consulted shortly before filing showed CDK's share ██████████.

Through four rounds of interrogatory responses and supplements, Tekion has been unable

3

to articulate any coherent basis for its 60% claim. It has repeatedly argued that it cannot reliably determine market share by revenue without the financial data of third parties—which it lacks—while incoherently *also* re-asserting its 60% claim. CDK served an interrogatory at the very outset of discovery asking Tekion to identify the market share of market participants. Four times—from the initial answer through three separate supplements—Tekion refused to answer as to any participant other than CDK. Ex. 9 ("Tekion's First Rog Resps.") at 4:7–26; Ex. 10 ("Tekion's First Supp. Rog Resps.") at 3:18–4:17; Ex. 11 ("Tekion's Second Supp. Rog Resps.") at 5:5–7:5; Ex. 12 ("Tekion's Third Supp. Rog Resps.") at 7:8–9:27. In these verified responses, Tekion has objected over and over that it "does not presently know the market share, 'by total DMS revenue for franchise dealers' for 'every Market Participant in the Franchise DMS Market,'" because determining such market share "requires detailed financial and operational data from multiple market participants." Tekion's First Supp. Rog Resps. at 3:23–26, 4:5–9; *see also* Tekion's Second Supp. Rog Resps. at 3:16–20, 5:11–14; Tekion's Third Supp. Rog Resps. at 5:11–14, 5:23–27. At the same time, it has re-asserted under oath the 60% market share claim as to CDK in each subsequent response and supplement. Tekion's First Rog Resps. at 4:24–26; Tekion's First Supp. Rog Resps. at 4:17–20; Tekion's Second Supp. Rog Resps. at 6:4–7; Tekion's Third Supp. Rog Resps. at 8:18–21. Tekion cannot coherently or credibly maintain that it lacks the data to calculate market share by revenue for any other participant—*including itself*, despite possessing complete internal revenue data—while simultaneously alleging and then re-asserting CDK's share is 60% by revenue. If revenue data is essential to calculate market share (as Tekion has contended, and upon which basis Tekion has both withheld complete discovery responses and sought discovery from third parties), and Tekion lacks that data, then Tekion's 60% allegation cannot rest on any reliable foundation.

This lawsuit is not Tekion's first attempt to deploy unfounded antitrust allegations against CDK in pursuit of competitive advantage. When direct competition in the marketplace proved insufficient, ██████████████████████████████, armed with inflated market share figures designed to conjure the specter of monopoly power where none exists. Indeed, before filing this lawsuit, ████████████████████████████████████████

4

███████████████████████████████████████████

███ . In those efforts, Tekion represented ███████████████████

███████████████████████████████████████████

███████████████████████████ . Ex. 13 at 8; Ex. 14 at 8. The escalation from ███████

███████████████████ to 60% in the Complaint suggests that Tekion tailored its already inflated market share allegation to whatever percentage it believed necessary to survive judicial scrutiny, without regard to the actual, underlying facts.

*      *      *

On March 4, 2026, following Gillrie's deposition, CDK's counsel sent Tekion a detailed letter pursuant to Rule 11, identifying the ways in which the 60% market share allegation lacked evidentiary support and the record definitively disproved it. Ex. 16 ("Mar. 4, 2026, Rule 11 Ltr."). The letter demanded that Tekion: (1) amend the Complaint to remove the 60% allegation or provide documentary evidence demonstrating actual support; (2) submit a letter to the Court retracting counsel's representations at the June 26, 2025, motion to dismiss hearing; and (3) commit in writing to cease advocating for the baseless allegation. *Id.* Two weeks after receiving the letter, Tekion served its Third Supplemental Interrogatory Response doubling down on the 60% allegation—and did so again in its RFA responses, served the same day, which admitted that it possesses no third-party support, while falsely implying it had no contrary market studies. *See infra* at 9–12, 14.

The prejudice to CDK has been profound. CDK has been forced to commit innumerable resources to reviewing and exchanging hundreds of thousands of documents, including producing its most sensitive documents to its aggressive competitor, deposing third parties and preparing to depose Tekion's witnesses, moving to dismiss and then subsequently for summary judgment on Tekion's baseless claim, and preparing this Rule 11 motion.

This Court should not tolerate Tekion's conduct. Tekion made a baseless factual allegation that is the linchpin of its entire case. It advocated that allegation before this Court, representing that additional factual support existed when it did not and made no mention of the contradictory market studies that counsel had reviewed prior to filing the Complaint. And even after being put on notice of the allegation's falsity through the unequivocal sworn testimony of its source, Tekion served

5

discovery responses that reiterate the 60% by revenue claim. Sanctions against Tekion are warranted and necessary to deter this misconduct and remedy the prejudice CDK has suffered.

## BACKGROUND

I.      **Tekion Based Its 60% Market Share Allegation on a Single Article,** *Added a "By Revenue" Embellishment,* **and Then Misrepresented its Evidence to This Court.**

Tekion's Complaint alleges that CDK possesses monopoly power in the market for dealer management systems for U.S. franchise dealerships (the "DMS Market"). The factual foundation for Tekion's claim rests on a single allegation, repeated in various forms throughout the Complaint: "By revenue, CDK has a 60% share of [the] DMS market for franchise dealerships . . . in the United States." Compl. ¶ 30; *see also id.* ¶¶ 2, 29, 54, 67. The Complaint cites as its sole source an article in *Automotive News* that quoted an estimate from industry analyst Matthew Gillrie, devoid of any methodology, context, or any indication it referred to market share *by revenue. Id.*; *Automotive News* Art. (04/10/2024) at -00514888.

That allegation was all the more extraordinary because it diverged dramatically from every public estimate of CDK's market share. For example, the FTC's administrative complaint in *In the Matter of CDK Global and Auto/Mate*—which Tekion itself attached as Exhibit A to its Complaint—stated that if the acquisition there challenged were consummated, "CDK would control approximately 47% of the franchise DMS market"—implying that CDK's then-present market share was *lower*. The acquisition did not go through.[1] The Seventh Circuit similarly held in *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019 (7th Cir. 2017), that CDK holds "over 40%" of the DMS market and that Reynolds & Reynolds, the second-largest competitor in the market, holds "around 30%." *Id.* at 1022. In related multidistrict litigation, the district court found it "undisputed" at summary judgment that CDK and Reynolds "together control 70 percent" of the market. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 941 (N.D. Ill. 2023). A reasonable pre-filing inquiry would have revealed that no reliable public source supports a 60% market share figure for CDK by any metric, let alone "by revenue."

---

[1] The public version of the FTC's administrative complaint redacted the then-current market share figures. ████████████████████████████████████████ ████████████████████████████████████████████████████████ .

6

When CDK challenged the plausibility of that allegation at the June 26, 2025, hearing on CDK's motion to dismiss—noting that every other public estimate put CDK's market share well below the 60% mark, *see* Dkt. 23 at 10–14—this Court questioned Tekion's counsel about its factual basis. Dkt. 48 at 70:21–22. In response, Tekion's counsel expressly advocated for the allegation and represented to the Court that factual support existed beyond the *Automotive News* article: "So there is the article, but I think it's not fair to say that we rely on that entirely, and there are other facts." *Id.* at 70:23–25. Tekion's counsel further represented: "I can list a bunch of facts … that do support the 60 percent certainly enough to make that number a plausible inference." *Id.* at 71:17–19.

Those representations were false. As subsequent discovery confirmed and as explained below, the Gillrie estimate (and Tekion's "by revenue" embellishment on that estimate) was entirely unsupported and no "other facts" supported the 60% allegation. And overwhelming evidence—including analyses solicited or received by Tekion, its general counsel, its senior executives, and its outside counsel *in the month before filing suit*—rebutted it.

**II. Discovery Confirmed That the 60% Market Share Allegation Is Baseless and Affirmatively Rebutted by Materials Tekion Possessed and Reviewed Shortly Before Filing Its Complaint.**

**A. Matthew Gillrie Disavowed Tekion's Interpretation of His Statement and Confirmed He Does Not Know CDK's Market Share.**

The April 2024 *Automotive News* article on which Tekion's allegation depends provides no foundation for a claim that CDK holds 60% of the DMS market "by revenue." *Automotive News* Art. (04/10/2024) at -00514888. The word "revenue" appears in the article only twice, and never in connection with CDK's market share. *Id.* at -00514990. The article attributes to Gillrie only an estimate that CDK has "about 60 percent of the market." *Id.* at -00514888. The article provides no data, no analysis, and no explanation of how the figure was calculated. It does not identify the geographic scope (U.S. only or including Canada), the customer base (franchise dealerships only or all dealerships), or the measure of market participation (rooftops, revenue, dealer groups, or some other metric). *Id.*

On February 23, 2026, CDK deposed Matthew Gillrie. His testimony unequivocally

7

CDK Global, LLC's Sanctions Motion
Case No.: 3:24-cv-08879-JSC

dismantled every aspect of Tekion's reliance on his statement to support its 60% market share claim. Gillrie testified that the Gillrie Institute has never possessed market share data and that he told *Automotive News* in 2023, nearly a year before the April 2024 article, that "market share data is not available." Ex. 1 (Gillrie Dep. Tr.) at 33:21–24; Ex. 17 ("*Automotive News* Art. (05/19/2023)") at -00005005. He confirmed that the Gillrie Institute has never had "full market share data," Gillrie Dep. Tr. at 34:15–24, and does not "know[] every single DMS that every single dealer is using," *id.* at 34:25–35:1.

More critically, Gillrie testified that he does not know CDK's market share—not today, not in 2024 when the article was published, and not at any point between 2020 and the present. He confirmed that he does not know: (1) how many U.S. franchise dealership customers CDK has; (2) CDK's share of the U.S. franchise DMS market on a rooftop basis; (3) CDK's share of the U.S. franchise DMS market on a dealer group basis; or (4) CDK's share of the U.S. franchise DMS market based on revenue. *Id.* at 64:17–67:5. That testimony should be no surprise, as Gillrie's estimate diverged dramatically from virtually all other public information.

When asked directly whether his 60% estimate was based on CDK's share of the market by revenue, Gillrie responded: "[R]evenue had nothing to do with it." *Id.* at 62:23–63:3. He further confirmed that his estimate was not limited to the U.S. franchise DMS market as alleged in Tekion's Complaint. *Id.* at 62:7–22. And his testimony confirmed that his methodology was fundamentally flawed: he divided CDK's self-reported "15K plus retail locations served across North America"—a statement on CDK's website that was *not* limited to its DMS product—by the total number of automotive and light truck dealerships in the U.S. and Canada. *Id.* at 53:1–8; 58:23–60:23. This methodology, to the extent it can be called that, thus (1) includes Canadian dealerships, which are not within the market at issue in this matter, (2) includes dealerships using CDK products other than its DMS, which are also not within the market at issue in this matter, and (3) had no connection whatsoever to revenue.

When asked whether his prior statements about CDK's 60% market share were reasonable, Gillrie testified: "Well, with the information that I have now, and with everything that I've seen, I really don't know what the market share [is]." *Id.* at 138:12–139:5.

8

Despite having a direct line to Gillrie, Tekion did nothing to confirm the basis for his statement before filing its Complaint. Tekion, its lawyers, and its representatives did not contact Gillrie at any point between the article's publication in April 2024 and the filing of the Complaint in December 2024 to inquire about his methodology, the scope of his estimate, or whether it referred to revenue. *Id.* at 63:9–64:4.

**B.      Tekion Is Unable to Identify Any Basis for Its 60% Market Share Allegation Through Four Rounds of Interrogatory Responses.**

Tekion's discovery responses confirmed the allegation's baselessness. CDK's Interrogatory No. 2, served on July 18, 2025, asked Tekion to identify the market share "by total DMS revenue for franchise dealers" for each market participant. Tekion's First Rog Resps. at 4:8–10. Four times Tekion responded. Four times Tekion came up empty.

In its original October 10, 2025, response, Tekion merely repeated its conclusory allegation about CDK's market share without any factual support and refused to provide market shares for any other participants. *Id.* at 4:22–26. For months thereafter, CDK pursued complete responses, and Tekion eventually assured CDK it would produce a supplement addressing CDK's concerns.

In its First Supplemental Response dated January 30, 2026, Tekion reiterated its 60% claim and ███████████████████████████████████████████████████████████ Tekion will not even stand behind this document. ███████████████████████████████ Tekion disclaimed reliance on it, stating that its response "should not be construed as an admission that such information is accurate or relevant to market share calculations." Tekion's First Supp. Rog Resps. at 4:12–13.

Tekion then inexplicably concluded that "CDK accounts for approximately 60% of the

9

Franchise DMS market in the United States" based on unidentified "publicly available information" and "third party document productions to date." *Id.* at 4:17–20. But Tekion did not then—and has never since—identified any third-party document supporting a 60% by revenue allegation, because there is none. Tekion also refused to respond as to any other market participant, admitting that it "does not presently know the market share, 'by total DMS revenue for franchise dealers' for 'every Market Participant in the Franchise DMS Market'" because it had not obtained market share data through third-party discovery. *Id.* at 4:7–9.

CDK then yet again pursued complete responses and continued to press for production of market-share related documents—which, to that point, Tekion had not produced—and told Tekion that it would raise Tekion's attempts to avoid discovery into this key issue with the Court. Ex. 23 at 1–2 (Feb. 11, 2026 Email from E. Levin to Tekion Counsel). Tekion assured CDK that it would produce its documents and supplement its responses, a statement CDK relied on in forgoing the scheduled February 25, 2026, case management conference with the Court. *Id.*; Ex. 19 at 2–3 (Mar. 6, 2026, Email from E. Levin to Tekion Counsel) ("CDK relied on this assurance in forgoing the February 25 discovery conference with the Court.").

Tekion served its promised Second Supplemental Response on February 27, 2026, but yet again failed to add any responsive, substantive material to its prior responses. Tekion's Second Supp. Rog Resps. at 5:11–15. Instead, Tekion continued to rely on the ██████████████ ███████████████████████████ while simultaneously maintaining its 60% "by revenue" allegation. *Id.* at 6:1–7.

CDK again raised Tekion's refusal to answer the interrogatory, *see* Ex. 19 at 2–3 (Mar. 6, 2026, Email from E. Levin to Tekion Counsel); *id.* at 1 (Mar. 9, 2026, Email from E. Levin to Tekion Counsel), which ultimately resulted in Tekion committing to provide a *third* supplemental response. Yet when that supplement finally came, it reiterated Tekion's insistence that as to every other participant than CDK, "determining such market share 'requires detailed financial and operational data from multiple market participants, much of which is in the possession, custody, or control of CDK or third parties,'" Tekion's Third Supp. Rog Resps. at 7:23–26—a standard Tekion only applies to itself and market participants *other* than CDK, but not to CDK, whom Tekion has

10

confidently asserted over and over has a 60% market share by revenue. And it further claimed that "[a]t the time Tekion filed its Complaint, Tekion relied on" three sources as "contain[ing] data supporting Tekion's allegation in ¶ 29 of Tekion's Complaint that CDK has 60% market share by revenue": ███████████████████████████████████████████████████████████; and (3) the district court's opinion in *In re Dealer Management Systems Antitrust Litigation*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022). *Id.* at 8:21–9:2. But none of these sources supports a 60% market share by revenue—to the contrary, they affirmatively rebut it. That these are the best sources Tekion could marshal is a tell: there is no support for its 60% allegation.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Again, this figure is nowhere near 60%, and the analysis does not measure market share by revenue.

*In re Dealer Management Systems.* The 2022 district court opinion in *In re Dealer Management Systems* does not support Tekion's allegation either. That opinion observed in passing that CDK and Reynolds *together* hold approximately 75% market share by rooftop, *Dealer Management Systems*, 581 F. Supp. 3d at 1041—meaning that CDK's individual share could not be 60% unless Reynolds implausibly held only 15%. While the opinion also references a 90% combined share "by number of vehicles sold," *id.*, that metric is entirely distinct from revenue-based market share: a dealership's number of vehicles sold says nothing about its DMS provider's DMS revenue, as pricing, contract terms, and service levels vary widely across providers. The opinion is also years out of date, and does not make clear whether those figures were evidentiary holdings or merely uncontested contentions accepted for purposes of the motion.

Remarkably, none of the sources Tekion cites measures market share "by revenue"—the very metric on which Tekion's Complaint depends. Not one of them places CDK's market share by revenue anywhere near 60%. And as explained in greater detail below, *see infra* at 12–13, CDK's

11

interrogatory response is perhaps most remarkable for what it omits: The market-share study it and its outside counsel considered immediately before filing the Complaint, ███████████

███████████████████████████████████

██████████████████████████

**C.     Document Discovery Confirms That No Support Exists for Tekion's 60%-by-Revenue Claim and That Tekion Knew As Much When It Filed Its Complaint.**

Not a single document produced in this matter from any source substantiates the allegation that CDK holds 60% of the franchise DMS market "by revenue."[2] To the contrary, the record in this case confirms that Tekion lacked any basis for its 60% allegation and instead possessed data suggesting the opposite.

**1.     Tekion Solicited and Considered Market Studies That Affirmatively Disproved its Claim in the Lead Up to Filing Its Complaint.**

In the immediate lead up to Tekion's filing suit, its executives, general counsel, and outside counsel reviewed, considered, and in one instance, solicited comprehensive market analyses that affirmatively disproved its allegation.

On November 13, 2024, Tekion's General Counsel, Aysswarya Murthi, emailed Stefan Drechsel of DealerTech Nerd ████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████. Ms. Murthi forwarded this report to Tekion's outside counsel the same day. Ex. 6 (Tekion Privilege Log No. 1) at ref. 21. And two days later, she forwarded the report to Tekion's Executive Staff on November 15, 2024. Ex. 5 (TEKION01174085) at -01170485. Ms. Murthi similarly received ████████████████ ███████████████████ and circulated it to Tekion's outside counsel in August and

---

[2] Fact discovery in this case closes on June 26, 2026, and substantial completion of document discovery ends April 27, 2026. ECF No. 87. The parties agreed to produce all market-share related documents by April 20, 2026. *Id.*

12

October 2024. Ex. 6 (Tekion Privilege Log No. 1) at Refs. 3–8.

Most damningly, Tekion's general counsel, Corporate Controller, and outside counsel received an analysis prepared by ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████. On December 3, 2024, less than a week before Tekion filed suit, Tekion's CFO emailed Corporate Controller Anirudh Badia ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████. Badia would, alongside Murthi, later verify Tekion's interrogatory responses and supplements. And Murthi forwarded the studies to Tekion's outside counsel in this case. Ex. 6 (Tekion Privilege Log No. 1) at refs. 6–8, 21, 22.

It bears emphasis that when Tekion finally disclosed the materials it purportedly relied on in its interrogatory responses dated March 18, 2026, *see supra* at 9–12, it cited only the ████████ ████████████████████████████████—conspicuously omitting ████████████, which Tekion was reviewing at the same time and which directly addressed market share by revenue. The selective disclosure is telling: Tekion could only have identified ██████████████████████████ studies by reviewing the same materials that included ████████████—suggesting Tekion selectively chose to omit the one study that was most directly on point. The reason for the omission is obvious: the ████████████████████████████████████████████████ Tekion cherry-picked the sources that it believed might provide cover for its allegation while burying the most relevant analysis.

**2.    Tekion's RFA Responses Admit That No Factual Basis Exists for Its 60% Market Allegation While Misrepresenting the Contrary Information It Reviewed Before Filing the Complaint.**

On March 18, 2026, Tekion responded to CDK's first set of Requests for Admission. Tekion

13

First RFA Resps. at 5:13. Request for Admission No. 4 asked Tekion to: "Admit that You are not aware of any Independent Third-Party Market Analysis that states that CDK has a 60% or greater share of the DMS market for franchise dealerships by revenue." *Id.* at 4:23-24.

After objecting on various grounds, Tekion admitted: "Tekion admits that it is not presently aware of any Independent Third-Party Market Analysis that measures market shares of the DMS market for franchise dealerships by any non-public metric, including revenue." *Id.* at 5:8-10.

Tekion thus concedes that it is "not presently aware" of any third-party market analysis supporting its central factual allegation. And Tekion's implicit justification for this absence of evidence—that market share data by revenue is "private"—only underscores the recklessness of making the allegation in the first place.

Moreover, Tekion's claim that it possessed no third-party analyses of market share by revenue was demonstrably false. As it turns out, and as described above, Tekion *possessed and considered such an analysis when it filed its Complaint*—but it directly contradicts Tekion's claim.

███████████████████████████████████████████████████████████

██████████████████████████████████████████████.

### 3. Despite Being Put on Notice, Tekion Continues to Re-Assert the 60% Market Share Allegation.

On March 4, 2026, CDK sent Tekion a detailed letter putting Tekion on notice that it intended to pursue sanctions if Tekion did not withdraw its claim. Ex. 16 (Mar. 4, 2026, Rule 11 Ltr.). The letter identified the ways in which the 60% market share allegation lacked evidentiary support, detailed the contradictory evidence that had emerged through discovery, and explained Tekion's continuing duty under Rule 11 to cease advocating for baseless claims. *Id.* at 8.

The letter demanded that Tekion take three actions within twenty-one days: (1) amend the Complaint to remove the 60% allegation or provide documentary evidence demonstrating actual evidentiary support; (2) submit a letter to the Court retracting counsel's statements at the June 26, 2025 hearing; and (3) commit in writing to cease advocating for the 60% allegation absent obtaining reliable evidentiary support.

Tekion nonetheless persisted in advocating for the 60% claim, reiterating it in its March 18,

14

2026, third interrogatory supplement. Tekion's Third Supp. Rog Resps. at 8:19–20.

## LEGAL STANDARD

Rule 11(b) provides that by presenting a pleading to the court, an attorney certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Under Rule 11, "a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry.'" *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002). That inquiry requires an attorney to undertake an "independent investigation into the allegations." *Willis v. City of Oakland*, 231 F.R.D. 597, 599 (N.D. Cal. 2005).

Federal Rule of Civil Procedure 26(g)(1)(B) states in part that "[b]y signing, an attorney ... certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry ... with respect to a discovery ... response ... it is consistent with the rules." Rule 26(g)(3) states that if a certification violates Rule 26 without substantial justification, the Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Sanctions are mandatory under this language. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993).

Additionally, a "district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "Providing false or incomplete information … in a response to a discovery request constitutes the sort of willfulness, bad faith, or fault required for dismissal." *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013), aff'd, 620 F. App'x 564 (9th Cir. 2015).[3]

---

[3] Notwithstanding Rule 11's prohibition on motions combining sanctions motions with merits motions, a litigant may combine "[m]otions for sanctions under several different provisions of law." *W.V. ex rel. N.V. v. Encinitas Union Sch. Dist.*, 289 F.R.D. 308, 311 n.3 (S.D. Cal. 2012). Such motions "are routinely filed and frequently granted, and the grants frequently affirmed." *Id.*

15

## ARGUMENT

**I.    Tekion Violated Rule 11(b)(3) by Making and Advocating for Factual Contentions Without Evidentiary Support.**

    **A.    Tekion Failed to Conduct a Reasonable Pre-Filing Inquiry Into the Accuracy of Its Baseless 60% Market Share Allegation.**

Tekion's 60% by-revenue claim was both "factually 'baseless' from an objective perspective," and unsupported by "a reasonable and competent inquiry." *Christian,* 286 F.3d at 1127. Rule 11 requires "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). The standard is objective: the inquiry must be reasonable regardless of the attorney's subjective good faith.[4] *Christian,* 286 F.3d at 1127.

As outlined in the background above, Tekion's 60% allegation is baseless. The sole cited source—an offhand estimate by Matthew Gillrie in an *Automotive News* article—never mentioned revenue, provided no methodology, and Gillrie himself disavowed it at deposition, testifying that "revenue had nothing to do with it." Every credible market analysis considered by Tekion in the lead up to filing its Complaint places CDK's share below 60%: ████████████████████ ████████████████████████████████████████████████, and the FTC's administrative complaint at less than 47%. Tekion's discovery responses fail to identify any other source that supports its allegation, and there is none in the record. And Tekion's subsequent discovery responses have confirmed that Tekion lacked any basis for its claim and could not calculate market shares for any participant, including itself, absent market-wide revenue data. Within just the past two weeks, Tekion has reiterated this position and has contended that revenue data is indispensable for calculating market share. In an April 16, 2026 letter, Tekion's counsel wrote: "[R]evenue data is important for calculating market shares and assessing whether any single provider possesses market power; without this data, such calculations would be difficult or incomplete." Ex. 21 at 1. If revenue data is "important" and its absence makes calculations "difficult

---

[4] This Court's prior decision at the motion to dismiss stage does not help Tekion. "[I]t is of course irrelevant…. That tested the legal sufficiency of the pleading, assuming its factual allegations to be true," while the present motion is "now saying there was no ground for those factual allegations— an altogether different issue." *Brandt v. Schal Assocs., Inc.,* 121 F.R.D. 368, 377 (N.D. Ill. 1988); *accord Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 374 (6th Cir. 1996).

or incomplete," then Tekion's 60% market share allegation—which purports to measure CDK's share "by revenue"—cannot rest on a reliable foundation when Tekion admits it lacks that data.

For similar reasons, Tekion's pre-filing inquiry was manifestly unreasonable. The *Automotive News* article does not state—and could not support the allegation—that Gillrie's estimate is based on "revenue." *Automotive News* Art. (04/10/2024) at -00514888. Its references to "revenue" have nothing to do with CDK's market share. *Id.* at -00514990. The article provides no methodology or factual basis for Gillrie's "estimate," making it impossible to determine how the figure was calculated, what market it refers to, or by what metric. And an *Automotive News* article from just the year prior quoted Gillrie admitting that he did not know DMS market shares. *Automotive News* Art. (05/19/2023) at -00005005.

Those gaps alone should have prevented Tekion from resting its monopolization allegations on the article. An inquiry reasonable under the circumstances—which, at the barest minimum, should have included closely reading the article—would have revealed that the article does not support the allegation as pleaded. But Tekion evidently did not take that basic step or, if it did, knowingly added an embellishment—the "by revenue" measure—the article did not contain. Nor did Tekion, its lawyers, or any other representative or agent contact Gillrie to inquire about the basis for his statement, despite having a direct line to him, at any point between the article's publication in April 2024 and the filing of the Complaint in December 2024. Gillrie Dep. Tr. at 63:9–64:4.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Yet Tekion chose to ignore this analysis and instead anchor its Complaint on an unsupported, passing estimate from an industry observer. This was a deliberate decision to plead a more sensational— but false—market share figure to bolster Tekion's monopolization claim. Notably, Tekion did not even hedge by pleading the 60% figure "on information and belief"—it asserted the allegation as fact, certifying under Rule 11 that the claim had evidentiary support when it did not.[5]

---

[5] To the extent Tekion continues to assert its 60%-by-revenue claim in its forthcoming opposition

CDK Global, LLC's Sanctions Motion
Case No.: 3:24-cv-08879-JSC

**B.      Tekion Violated Its Continuing Duty Under Rule 11 to Withdraw Baseless Allegations.**

Rule 11 imposes a continuing obligation. The 1993 Advisory Committee Notes make clear that a party's obligations "are not measured solely as of the time [papers] are filed," but "include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11, adv. cmte. notes (1993). The "later advocating" language means that "each of the certifications creates a continuing duty not to persist in advocating positions contained in those papers after learning that they cease to have merit." *In re LeGrand*, 638 B.R. 151, 161 (Bankr. E.D. Cal. 2022).

Rule 11 obligations "'are not measured solely as of the time' of filing; they extend throughout the litigation." *Kinney v. Bridge*, 2017 WL 492832, at *3 (N.D. Cal. Feb. 7, 2017) (quoting Fed. R. Civ. P. 11 adv. cmte. notes (1993)), aff'd in part, dismissed in part on other grounds sub nom. *Kinney v. Nob Hill Grill,* 710 F. App'x 783 (9th Cir. 2018); *accord In re Est. of Taplin*, 641 B.R. 236, 247 (Bankr. E.D. Cal. 2022). "The rule thus permits sanctions against a party 'for insisting upon a position after it is no longer tenable.'" *Kinney*, 2017 WL 492832, at *3; *accord Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), aff'd, 753 F. App'x 3 (2d Cir. 2018); *Bunnell v. Haghighi*, 183 F. Supp. 3d 364, 372 (E.D.N.Y. 2016). "The standard is objective, though a court may look to whether there is 'a pattern of activity' or just 'an isolated event.'" *Kinney*, 2017 WL 492832, at *3.

The record here establishes that Tekion has violated its continuing duty under Rule 11. Gillrie disavowed the 60% estimate in his February 23, 2026 deposition. Tekion's discovery responses tacitly confirm it has no other support for the allegation. ███████████████ ████████████████████████████████. And Tekion admitted in its RFA responses that it is not aware of any third-party analysis supporting the 60% claim. Tekion First RFA Resps. at 5:8–10. Tekion assured the Court at its June 26, 2025, motion to dismiss hearing that evidence supporting the claim would be forthcoming, but no such evidence has materialized (because none

---

to CDK's motion for partial summary judgment, that too represents a violation of Rule 11 for the same reasons its Complaint and post-Complaint advocacy do.

18

exists).

Yet far from abandoning its baseless allegation, Tekion has doubled, tripled, and quadrupled down. Tekion reiterated the 60% allegation in round after round of discovery responses. Tekion received CDK's letter on March 4, 2026, detailing the lack of evidentiary support and demanding corrective action. Mar. 4, 2026, Rule 11 Ltr. at 2-6. Tekion did not withdraw the allegation. Tekion did not alert the Court to the unsubstantiated allegation in its Complaint. Only after service of the instant motion did Tekion file a motion to amend the Complaint that would remove the offending 60% allegation and the reference to the Gillrie article. But this belated proposed amendment does not moot CDK's Rule 11 motion or cure Tekion's sanctionable conduct. This pattern constitutes a failure to adhere to Tekion's "continuing duty" under Rule 11.

## II.    Tekion's Discovery Responses Violate Rule 26(g)(1)(B).

Tekion's discovery responses independently violate Rule 26(g). Through four rounds of interrogatory responses, Tekion has baselessly insisted that CDK holds 60% of the market by revenue and failed to identify any grounds supporting that claim. In those same responses, Tekion has maintained that it cannot calculate market share by revenue for any other participant—including itself—because doing so "requires detailed financial and operational data from multiple market participants" that Tekion lacks. Ex. 12 at 5, 7, 10, 12, and 14. Tekion's own counsel has reiterated the point in recent weeks: revenue data is "important," and without it, market share calculations are "difficult or incomplete." Ex. 21 at 1. Tekion cannot have it both ways. If revenue data is essential to calculate market share, and Tekion lacks that data, then Tekion has no basis to certify that CDK's share is 60% "by revenue."

The verified responses are even more indefensible given what Tekion knew. When Tekion filed its Complaint—and again when it served its discovery responses—Tekion possessed multiple market analyses contradicting the 60% figure and not a single document supporting it: ███████

███████████████████████████████████

███████████ Tekion's General Counsel reviewed these documents. Tekion's Corporate Controller reviewed them. Tekion's outside counsel reviewed them. And then those same individuals verified interrogatory responses reasserting the 60% figure.

19

Tekion's RFA responses are an independent violation. CDK asked Tekion to admit that it was "not aware of any Independent Third-Party Market Analysis" placing CDK's market share at 60% or greater "by revenue." Tekion responded that it "is not presently aware of any Independent Third-Party Market Analysis that measures market shares of the DMS market for franchise dealerships by any non-public metric, including revenue." Tekion First RFA Resps. at 5:8-10. That response was false. Tekion possessed exactly such an analysis ██████████ and had reviewed it before filing suit. Tekion's counsel certified the response anyway, misrepresenting the record and concealing the very evidence that disproved the 60% claim.

### III.    Tekion's Pattern of Misconduct Warrants Sanctions Under the Court's Inherent Authority.

Independent of Rule 11 and Rule 26(g), a district court possesses inherent authority to sanction bad-faith conduct. *Fink*, 239 F.3d at 992. That authority extends to "a broad range of willful improper conduct," *id.*, including "providing false or incomplete information … in a response to a discovery request." *Englebrick*, 944 F. Supp. 2d at 909. Courts have held that "[l]ying under oath and submitting false discovery responses constitute deliberate misconduct" warranting sanctions. *Watkins v. Infosys*, 2015 WL 4493440, at *4 (W.D. Wash. July 23, 2015), aff'd, 724 F. App'x 520 (9th Cir. 2017).

Tekion's conduct satisfies this standard. The record reveals a deliberate and sustained campaign to assert and pursue a baseless factual claim while concealing the evidence that disproved it.

Consider the arc of Tekion's conduct. Tekion filed a Complaint nearly 17 months ago alleging CDK holds 60% of the market "by revenue"—a figure unsupported by any document in Tekion's possession and contradicted by every market analysis Tekion reviewed, including one expressly measuring market share by Tekion's preferred metric. Tekion cherry-picked the least reliable source (the Gillrie quote) because it was the only source that supported an allegation high enough to survive a motion to dismiss—allowing Tekion to embark on a fishing expedition to find a stronger antitrust claim than the baseless one it pleaded—and added the "by revenue" embellishment because the public record so forcefully rebutted the notion that CDK possesses a

20

60% market share by rooftop. Tekion ignored ███████████ —which it possessed and reviewed— because it undermined its claim. When CDK challenged the allegation at the motion to dismiss stage, Tekion's counsel doubled down, representing to this Court that "other facts" supported the 60% figure. Tekion's outside counsel, who also reviewed the contradictory evidence, signed and certified it. Through four rounds of interrogatory responses, Tekion blindly reiterated the allegation while simultaneously maintaining that market share by revenue cannot be calculated without data Tekion lacks. Tekion's General Counsel and Corporate Controller—the very individuals who reviewed ████████████████████████████████████ —verified those responses. And Tekion admitted it had no supporting evidence, while simultaneously obfuscating the contrary evidence it did possess, in its RFA response.

Tekion has had opportunity after opportunity over the past nearly year-and-a-half to walk back its baseless claim. After Gillrie disavowed his estimate at deposition—testifying that "revenue had nothing to do with it"—Tekion did not withdraw the claim. After four rounds of interrogatory responses failed to identify any supporting evidence, Tekion did not withdraw the claim. After CDK's Rule 11 letter detailed the lack of evidentiary support, Tekion did not withdraw the claim. And when CDK asked Tekion point-blank whether it possessed any third-party market analysis measuring market share by revenue, Tekion denied possessing any such analysis, ███████████ ███████████. Only after service of this motion and the filing of a motion for summary judgment, on the last day of the safe harbor period, did Tekion finally file a motion to amend that would excise the offending allegation—but even then, Tekion has not acknowledged the impropriety of its prior conduct, corrected its discovery responses, or reimbursed CDK for the costs incurred. Tekion has been unwilling to admit that its 60% figure was results-oriented from the start—selected not because it reflected reality, but because it was the number Tekion needed to plead. The combination of the unsupported initial allegation, the misrepresentations to the Court, the internally inconsistent discovery positions, the verification and certification by individuals who knew better, the affirmative concealment of contrary evidence, and the refusal to meaningfully correct the record collectively demonstrate the willfulness required for sanctions under this Court's inherent authority.

21

**IV.     Sanctions Including Dismissal Are Warranted to Deter Tekion's Misconduct and Compensate CDK for Its Prejudice.**

Under Rule 11, a party may be subject to "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Pursuant to Rule 26, "[t]he nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances." Fed. R. Civ. P. 26(g), adv. cmte. note. The Court's inherent authority to impose sanctions is especially broad, and the Court possesses the discretion to impose any appropriate sanction, ranging from attorneys' fees to outright dismissal. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Englebrick*, 944 F. Supp. 2d at 910. "[S]ubmitting false discovery responses constitute[s] deliberate misconduct warranting the sanction of dismissal." *Watkins*, 2015 WL 4493440, at *4, aff'd, 724 F. App'x 520.

Tekion's misconduct has been knowing, persistent, and enormously prejudicial to CDK. CDK has already expended millions of dollars defending against a case predicated on a false factual allegation and false claims in discovery. CDK has conducted extensive discovery, including deposing Gillrie and other third parties, reviewing and producing hundreds of thousands of pages of documents, preparing to depose Tekion's own witnesses and to defend depositions of its own witnesses, and has been forced to move for summary judgment on Tekion's market share claim. And Tekion has been given repeated opportunities over the course of the litigation to walk back its claim yet has doubled down time and time again. Moreover, Tekion's false 60% allegation has risked further prejudice to CDK in the form of opportunistic follow-on litigation. Indeed, this has already happened: counsel for InDesign Data, LLC, the defendant and counterclaimant in the related *CDK Global, LLC v. Tekion Corp.* action, Case No. 3:25-cv-01394-JSC, indicated during a meet and confer with CDK that it based its own 60%-by-revenue market share allegation on Tekion's. This Court should impose sanctions commensurate with the severity of Tekion's misconduct and sufficient to deter further misconduct and prejudice to CDK. A severe sanction is particularly warranted to ensure deterrence given the strategic business value to Tekion of

22

continuing to press its baseless claim and the enormous financial resources Tekion possesses that make a mere monetary penalty unlikely to deter future misconduct. CDK therefore respectfully requests that the Court:

**Dismiss Tekion's Claims.** The Court should dismiss Count I (monopolization) and II (attempted monopolization) of the Complaint with prejudice. Tekion and its counsel have insisted over the course of seventeen months on pressing its baseless 60%-by-market-share claim through representations to the Court, repeatedly promising and then failing to deliver a factual basis for its claim, and falsely representing in its discovery responses that it had no contrary market studies by revenue. Tekion's false allegation forms the very core of its antitrust claims, and through the litigation CDK has provided Tekion multiple opportunities and notice that it must abandon its baseless contention. Only after service of this motion, on the last day before the safe harbor period expire, did Tekion file a motion to amend, but Tekion's belated proposed amendment—which CDK opposes to the extent it goes beyond excising the offending allegations—does not remediate the prejudice already suffered or cure the sanctionable conduct.[6] No lesser sanction than dismissal will deter Tekion from continued misconduct.

**Award Reasonable Attorneys' Fees and Costs.** The Court should award CDK its reasonable attorneys' fees and costs incurred in connection with defending against Count I and II of Tekion's Complaint, which is premised on Tekion's baseless allegation.[7]

**Require Tekion to Correct the Record.** The Court should require Tekion to file a letter on the docket acknowledging that its allegation and subsequent statements at the June 26, 2025,

---

[6] This belated proposed amendment—filed months after service of CDK's Rule 11 letter and the Gillrie deposition—does not moot CDK's motion or fully remediate the harm. First, Tekion has never acknowledged the impropriety of the allegation or its improper advocacy to this Court; the amendment itself constitutes at most a tacit acknowledgment, made months too late and after CDK has expended considerable resources defending against it. Second, Tekion has not reimbursed CDK for the substantial costs and fees incurred in defending against the offending allegation. Third, Tekion has not corrected its improper discovery responses that reiterated and defended the baseless claim. Fourth, Tekion's proposed amendment adds other objectionable material, which CDK intends to oppose to the extent the amendment does anything beyond excising the offending allegations. Accordingly, a live dispute remains.

[7] At a minimum, the Court should award fees and costs for the efforts CDK has expended defending against the baseless 60% claim.

hearing—asserting that CDK holds 60% market share "by revenue" and that "other facts" support this allegation—were not supported by any reliable evidentiary basis.

**Award Such Other Relief as the Court Deems Appropriate.** The Court has broad discretion to fashion sanctions appropriate to remedy Tekion's misconduct. CDK respectfully requests that the Court impose any additional sanctions it deems necessary to deter future violations and compensate CDK for the prejudice it has suffered.

## CONCLUSION

CDK respectfully requests the Court enter an order pursuant to Rules 11 and 26 and its inherent authority sanctioning Tekion for the foregoing misconduct.

Dated: May 18, 2026

**SUSMAN GODFREY L.L.P.**

By: */s/ Vineet Bhatia*
VINEET BHATIA (Admitted Pro Hac Vice)
SHAWN RAYMOND (Admitted Pro Hac Vice)
DANIEL WILSON (Admitted Pro Hac Vice)
MEREDITH R. HARRISON (Admitted Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com
dwilson@susmangodfrey.com
mharrison@susmangodfrey.com

JESSE-JUSTIN CUEVAS (SBN 307611)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
jcuevas@susmangodfrey.com

EVE LEVIN (Admitted Pro Hac Vice)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

24

elevin@susmangodfrey.com

*Attorneys for Defendant CDK Global, LLC*

25