**PUBLIC - REDACTED**

VINEET BHATIA (*Admitted Pro Hac Vice*)
vbhatia@susmangodfrey.com
SHAWN RAYMOND (*Admitted Pro Hac Vice*)
sraymond@susmangodfrey.com
Daniel Wilson *(Admitted Pro Hac Vice)*
dwilson@susmangodfrey.com
Meredith R. Harrison *(Admitted Pro Hac Vice)*
mharrison@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

EVE LEVIN (*Admitted Pro Hac Vice*)
elevin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

STEPHEN MORRISSEY *(Admitted PHV)*
smorrissey@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

*Attorneys for Defendant CDK Global, LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| TEKION CORP., a Delaware corporation<br><br>*Plaintiff,*<br><br>vs.<br><br>CDK GLOBAL, LLC, a Delaware limited liability company<br><br>*Defendant.* | Case No. 3:24-cv-08879-JSC<br><br>**DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS OF LOREN K. SMITH**<br><br>Date: July 31, 2026<br>Time: 9:00 a.m.<br>Court: 8, 19th Floor<br>Judge: Honorable Jacqueline Scott Corley<br>Trial Date: July 12, 2027 |

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC

**TABLE OF CONTENTS**

I.      Introduction...............................................................................................................1

II.     Tekion Fails To Cure Smith's Reliance on Unreliable, Outdated Data ...............................2

III.    Tekion Fails To Prove that Smith's Revenue Share Methodology Is Reliable ...................7

IV.     Tekion Fails To Demonstrate the Relevance of Smith's "███████████"
        Opinions...............................................................................................................11

V.      Conclusion .............................................................................................................14

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
738 F.3d 960 (9th Cir. 2013) ......................................................................................10

*Arjangrad v. JPMorgan Chase Bank, N.A.*,
2012 WL 1890372 (D. Or. May 23, 2012) ....................................................................6

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) .................................................................................................8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ..........................................................................................6, 9, 10

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ....................................................................................10

*Federal Trade Commision v. Tapestry, Inc.*,
755 F. Supp. 3d 386 (S.D.N.Y. 2024) ...........................................................................5

*Federal Trade Commission v. Sysco Corp.*,
113 F. Supp. 3d 1 (D.D.C. 2015) ..................................................................................5

*General Electric v. Joiner*,
522 U.S. 136 (1997) ...................................................................................................10

*Guifu Li v. A Perfect Day Franchise, Inc.*,
*281 F.R.D. 373 (N.D. Cal. 2012)* ................................................................................5

*Herrera v. Eli Lilly & Co.*,
2015 WL 12766468 (C.D. Cal. Aug. 3, 2015) ..............................................................6

*In re Arris Cable Modem Consumer Litigation*,
327 F.R.D. 334 (N.D. Cal. 2018) ...............................................................................10

*In re Google Play Store Antitrust Litigation*,
2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ...........................................................13

*International Swimming League, Ltd. v. World Aquatics*,
2025 WL 3257200 (N.D. Cal. Nov. 21, 2025) .......................................................6, 10

*Movie 1 & 2 v. United Artists Communications, Inc.*,
909 F.2d 1245 (9th Cir. 1990) ..............................................................................12, 13

*Oracle America, Inc. v. Google Inc.*,
2011 WL 5914033 (N.D. Cal. Nov. 28, 2011) ............................................................10

ii

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ...............................................................................6, 7

*Rebel Oil Co. v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ...................................................................................13

*Salinas Navarrete v. Peacehealth*,
  2026 WL 1509008 (D. Or. May 31, 2026) ...................................................................6

*South Yuba River Citizens League v. National Marine Fisheries Service*,
  257 F.R.D. 607 (E.D. Cal. 2009) ...............................................................................10

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F. Supp. 2d 821 (C.D. Cal. 2010) ..........................................................................6

*United States v. Syufy Enterprises*,
  903 F.2d 659 (9th Cir. 1990) ......................................................................................7

**Other Authorities**

2B AREEDA & HOVENKAMP ¶ 535a (5th ed. 2021).............................................................8

iii

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

## I.    Introduction

Tekion's Opposition is most striking for what it does not say. Rather than engage with CDK's critique of Smith's revenue share analysis, Tekion ignores the flaws in Smith's original methodology submitted in his initial declaration in opposition to CDK's pending summary judgment motion. Smith, for his part, also ignores those flaws. Rather than correct the obvious deficiencies in his July 7 declaration—including his failure to use actual rooftop data that had been available to him since early April or his use of revenue from non-DMS products to inflate CDK's revenue share—Smith submits new, irrelevant opinions on issues that are not before the Court.

Tekion **does not dispute** that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. These two clear errors distort the average-rooftop-spend input in Smith's calculations and, in turn, overstates CDK's revenue share. Tekion **does not dispute** that when Smith's methodology is applied to the actual rooftop counts in the alleged market, CDK's revenue share ███████. Tekion also **does not dispute** that CDK's revenue share would fall even further if ███████████████████████████████████████████████████ were removed from the analysis. Using Smith's exact revenue-share methodology but accounting for CDK's undisputed actual per-rooftop revenues, actual rooftop customers, and the actual DMS products at issue in the case Tekion alleged, CDK's revenue share falls to ███████. Ex. 18 ("Snail Daubert Reply Rpt.") at ¶ 17.

Instead of addressing any of these defects, Smith presents a new "███████████████" that is itself flawed and serves as the purported foundation for yet another set of newly-minted submarkets, including submarkets not even referenced in the amended complaint that Tekion seeks to file. *See* Ex. A ("Smith Opp. Rpt.") at ¶¶ 3–27. Like the ███████████████████████ and corresponding market share analyses Smith advanced in his opening report, *see* Ex. 1 (Smith Rpt.) ¶¶ 54, 60, Smith's July 7 opinions are irrelevant to the issues CDK

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

raised in its pending summary judgment motion because they concern submarkets that are not part of the case that Tekion actually alleged and the parties have litigated for the past 18 months.

But even Smith's new analysis based on new, different, and unpleaded submarkets fails to validate Smith's unreliable revenue-based methodology. Neither Tekion's Opposition nor Smith's July 7 declaration disputes that when a dealer switches DMS providers it substitutes one DMS product for another in a one-to-one ratio. Accordingly, units (here, the number of rooftop customers) best measures CDK's market share under controlling U.S. Supreme Court precedent, the U.S. Merger Guidelines, and Professors Areeda and Hovenkamp's leading antitrust treatise. By contrast, even under Smith's latest analysis, competitors' DMS revenues distort their market share because of the price differences among their DMS products. The revenue metric is thus unreliable for measuring CDK's share of the DMS market or any submarket.

Smith's Reply Report opinions remain unreliable, based on insufficient facts and data, and irrelevant under Federal Rule of Evidence 702, and Smith's July 7 opinions, which concern different new markets Tekion never alleged in its Complaint (or even in its proposed amended complaint), are likewise inadmissible. The Court therefore should grant CDK's motion to exclude.

## II.     Tekion Fails To Cure Smith's Reliance on Unreliable, Outdated Data

Even if Smith's revenue market share calculation were relevant, his opinions are inadmissible under Federal Rule of Evidence 702. Neither Tekion nor Smith have cured, or even disputed, the deficiencies CDK and its economist expert identified.

Smith derives his market share calculation by . Tekion does not dispute that: (i) ; (ii) ; and (iii) , which understates the total market and overstates CDK's rooftop numbers while understating Reynolds's and Tekion's. *See* Opp. at 19; Mot. at 20; Snail Daubert Reply Rpt. at ¶ 17. These flaws in the

2

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

**PUBLIC - REDACTED**

datasets lead to an inaccurate, inflated, revenue share calculation. Rather than confront these deficiencies directly, Tekion's claims that market revenue and rooftop data for the relevant time period "is unavailable," such that Smith had to rely on the unrepresentative, outdated datasets. Opp. at 4, 19; *see also id.* at 21 (arguing Smith "lacked the granular data" to calculate market share after 2022). This explanation, which does nothing to rehabilitate Smith's unreliable opinions, is demonstrably false.

As to rooftop data, Smith had no need to rely on the ██████ to determine each DMS provider's rooftop count of different dealership group sizes. CDK provided Tekion with its monthly count of U.S. franchise automotive dealership rooftops for July 2019 to March 2026, Ex. 2 (Snail Rpt.) ¶ 46, as did a large, third-party DMS provider, Ex. 3 (Snail Reply Rpt.) ¶ 48. Tekion, of course, has its own rooftop market share data. Tekion says that "CDK's argument that Dr. Smith should have used 'actual rooftop data'" produced in the litigation "is a self-serving attempt to force Dr. Smith to rely on CDK's preferred metric." Opp. at 20. This makes no sense. Smith *used rooftop data* from ██████████ for his market share analysis. Smith Rpt. ¶ 55 ("████████ ███████████████████████████████████████████████████). But he chose to use outdated, third-party estimates of rooftop counts, rather than the actual rooftop counts produced in this litigation. No one in this case has disputed the accuracy of the rooftop counts that have been produced in discovery. Why not use that data? Had Smith used the actual rooftop data Tekion possesses, instead of inaccurate rooftop figures from ████████████, his market-share-by-revenue calculation would have fallen below 50%, which is fatal to Tekion's Section 2 claims. Indeed, applying Smith's exact methodology to the actual rooftop data, CDK's expert Tim Snail calculated that CDK's market share by revenue is ██% . Snail Reply Rpt. ¶ 50, Ex. 2; Snail Daubert Reply Rpt. at ¶ 17.

As to revenue data, Tekion rehashes the Federal Rule of Civil Procedure 56(d) arguments improperly raised in the Sutter Declaration submitted in opposition to CDK's summary judgment motion (ECF 111). Tekion asserts that CDK "ultimately refused to produce customer-product-level revenue data, producing only aggregate self-reported figures" and "discouraged" competitor DMS

3

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

providers from providing revenue data. Opp. at 19. Not true, and, in any event, Tekion's "data gap" excuse falls apart for four independent reasons.

*First*, **Tekion has received the revenue data that CDK was ordered to produce**. During the June 17, 2026 hearing, the Court resolved the discovery dispute over additional revenue data by ordering CDK to produce revenue data for April 2026, as described by CDK's counsel on the record. *See* ECF 146 (Minute Order). On July 3, a week before Tekion filed its Opposition, CDK produced that data. Yet, Smith's July 7 declaration does not utilize the revenue data produced on July 3. Tekion does not claim that Smith lacked sufficient time to analyze the data for his July 7 declaration. If Tekion thought it needed more time for Smith to analyze this data, it could have requested an extension on its response deadline (or proposed a later date at the outset); it did not do so.

*Second*, before this supplemental revenue data production, CDK produced revenue data in multiple forms: (i) historical monthly revenue data for all DMS products covering July 2020 through January 2026, accounting for pricing adjustments such as discounts or bundles, ECF 134-3; (ii) monthly operating reports ("MORs") through October 2025, *see, e.g.*, ECF 117-7 (monthly report); and (iii) all weekly Executive Leadership Team reports through 2025, *see, e.g.*, ECF 117-8 (weekly report); *see also* ECF 134 (MSJ Reply) at 3–4 (describing data CDK produced). Smith's analysis ignores all of this evidence without any explanation. Had Smith used CDK's actual per-rooftop revenues from the produced MORs, CDK's revenue share would have fallen to ███████. As Dr. Snail explained (and Smith does not dispute), the ███████████████████████████ ██████████████████████████████████████, but CDK's actual revenue data (which was available to but ignored by Smith) shows that ████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████. *See* Snail Reply Rpt. ¶¶ 41 n.100, 45 n.117. Thus, following Smith's exact revenue-share methodology but accounting for CDK's undisputed per-rooftop revenues, undisputed rooftop

4

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

customers, and the actual DMS products at issue in this case, CDK's revenue share *falls to* ▮%. Snail Daubert Reply Rpt. at ¶ 17 & n.46; *see* Snail Reply Rpt. ¶ 41 n.100.

*Third*, CDK is not the reason why Tekion has not received revenue data from other market participants. Tekion waited *five months* to pursue discovery from third-party DMS providers, wasted weeks (and in some cases *months*) before following up on its subpoenas, and only rushed to file motions to compel against these subpoenaed non-parties after CDK filed for summary judgment. *See* ECF 134 (MSJ Reply) at 6–7.

*Finally*, Tekion has never sought revenue data from most market participants *at all*. Even if Tekion had received every shred of data it now claims it needs at the very outset of the case, it still would not have a dataset sufficient to construct a market-share-by-revenue analysis. The insufficiency of the record to support its case is a problem of Tekion's own litigation choices.

None of Tekion's cited authorities hold that an expert's opinion is admissible when he ignores actual market share data in the party's possession in favor of an admittedly unrepresentative dataset. *See* Opp. at 19–20. In *Guifu Li v. A Perfect Day Franchise, Inc.*, the defendant engaged in "repeated violations of this Court's discovery orders" such that the court deemed certain facts admitted as a sanction under Rule 37, and the court denied summary judgment in light of the admitted facts. 281 F.R.D. 373, 403 & n.29 (N.D. Cal. 2012). Tekion's other cases, at best, indicate an expert can rely on third-party data in some circumstances not present here. *See Fed. Trade Comm'n v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 443 (S.D.N.Y. 2024) (Tekion Ex. E) (Dr. Smith "relied upon four surveys" conducted by third parties, but no indication that alternative, more accurate data was available); *Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1, 35–37 (D.D.C. 2015) (FTC's expert "calculated the actual aggregate diversion based on three different data sets" where defendants argued that more accurate data was not available, and court found FTC's expert's reliance on such data "problematic" and thus "hesitate[d] to rely on [expert]'s precise" calculations). Those cases say nothing about the propriety of constructing a market share opinion based on two outdated consultant presentations containing unrepresentative data when an antitrust defendant has produced more than 1.7 million documents covering the relevant time period,

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

including relevant rooftop and revenue data, and when competitor third parties likewise have produced rooftop and revenue data directly relevant to calculating market share.

Tekion's fallback position is that CDK's objections to the ████████████████ go to weight, not admissibility. Opp. at 19. But *Daubert* is not, as Tekion suggests, a doctrine that permits an expert to offer opinions so long as he shows his work. Courts in this Circuit routinely exclude expert testimony that relies on incomplete or unrepresentative data. *See, e.g., Salinas Navarrete v. Peacehealth*, 2026 WL 1509008, at *14 (D. Or. May 31, 2026) (finding "expert testimony is unreliable because it is not based on sufficient facts or data" where expert based "his opinion mainly on data that emerged after the relevant timeframe"); *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 WL 1890372, at *6 (D. Or. May 23, 2012) (excluding expert testimony as unreliable where expert "lacked sufficient facts or data to make a reliable analysis" where expert did not consider available information related to his analysis); *Herrera v. Eli Lilly & Co.*, 2015 WL 12766468, at *5 (C.D. Cal. Aug. 3, 2015) (excluding expert opinion where evidence underlying his opinion "is insufficiently reliable to support" expert's conclusion); *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 834 (C.D. Cal. 2010) (excluding expert testimony "as unreliable and not based on sufficient facts or data" where expert did not analyze "the pricing, sales volume, or market share of" all competitors).

Tekion's principal authority is consistent with these cases. In *International Swimming League, Ltd. v. World Aquatics*, this Court declined to exclude an expert's opinion for "not verify[ing] the input facts and data upon which his testimony relies" because an expert "has no obligation to independently verify the facts upon which they base their opinion if those facts are part of the broader case." 2025 WL 3257200, at *7 (N.D. Cal. Nov. 21, 2025). Here, the issue is Smith chose to use the unreliable, facially unrepresentative ████████████████ knowing full well that he was not using the facts (actual revenue and rooftop data) that were part of the broader case.[1]

---

[1] Tekion's reliance on *Primiano v. Cook*, which concerned the admissibility of medical testimony in a products liability case governed by Nevada law, is inapposite. 598 F.3d 558, 561, 563 (9th Cir. 2010). In any event, the Ninth Circuit confirmed in *Primiano* that to admit expert opinion, "the trial

6

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

Tekion's additional argument that data from 2021–2022 is "probative" of CDK's present-day monopoly power is unavailing. Opp. at 20. Without citation, Tekion asserts that "[m]arket share evidence from the period immediately preceding alleged anticompetitive conduct is directly relevant to establishing the defendant's competitive position at the onset of that conduct." *Id.* But the question raised by CDK's motion for summary judgment is not what CDK's "competitive position" was before allegedly engaging in anticompetitive conduct in early 2023. The issue is whether Tekion can marshal specific facts to demonstrate before a jury that CDK has durable monopoly power, or a dangerous probability of acquiring it, during the alleged anticompetitive conduct. A snapshot of CDK's market share from 2022, before any alleged anticompetitive conduct began, says nothing about that issue. *United States v. Syufy Enters.*, 903 F.2d 659, 665–66 (9th Cir. 1990).

Next, pointing to a ███████████████████████, Tekion misrepresents that CDK "invoke[s] 2022-era data for its own arguments." Opp. at 20. But it is ***Tekion***—not CDK—who invoked that presentation in opposition to CDK's Motion for Summary Judgment. *See* ECF 112 (MSJ Opp.) at 5. To the extent Tekion's argument is that the data is probative because CDK used it ***in the presentation***, Opp. at 20 ("CDK's ████████████████ ██████████ using substantially the same vintage data"), Tekion's argument conflates two categorically different uses of data: ████████████████ ████████████████—*i.e.*, the most current data available at that time—and an expert's unjustifiable decision, in 2026, to rely on data from 2021–2022. That CDK once used ██ ██████████████████████ says nothing about whether an expert may reliably use 2021–2022 data in 2026 litigation.

## III.    Tekion Fails To Prove that Smith's Revenue Share Methodology Is Reliable

Franchise dealers who switch DMS platforms switch from one DMS provider to a different DMS provider—it is a one-to-one substitution. Under all relevant authority, units (here, rooftop

---

court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand'"—neither of which are true here. *Id.* at 564 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

7

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

**PUBLIC - REDACTED**

customers) are therefore the appropriate measure of CDK's market share. Tekion's Opposition and Smith's new "aggregate diversion test" do not prove otherwise and, in fact, confirm that Smith's revenue-based analysis is unreliable and thus should be excluded.

The U.S. Supreme Court, U.S. Merger Guidelines, and Professors Areeda and Hovenkamp agree that units, not revenue, should be used to measure market share when the relevant product (here, DMS) is substituted one-to-one. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 341 n.69 (1962); U.S. Merger Guidelines § 4.4.B at 50 (2023); U.S. Merger Guidelines § 5.2 at 17 (2010); 2B AREEDA & HOVENKAMP ¶ 535a (5th ed. 2021). Tekion does not dispute this authority. *See* Opp. at 8–10; Snail Daubert Reply Rpt. at ¶ 12. Instead, Tekion tries to argue that because different sized dealers have different DMS needs, these authorities do not support a unit-based metric. But Tekion's focus on different dealer and DMS complexities merely sets up a strawman based on a submarket Tekion never pleaded.

Tekion's argument fails to overcome the market reality that when a franchise dealer— regardless of size or complexity—switches DMS providers, the dealer switches one DMS for another, not one DMS for two or three. The example illustrated in Tekion's Opposition demonstrates this reality. Tekion posits that a single-rooftop dealer switching DMS providers makes a different competitive decision than a 250+ rooftop dealer switching DMS providers and that these dealers' selections of a new DMS provider "are not equivalent competitive events because one unit of the less sophisticated products cannot substitute for one unit of the more robust products." Opp. at 9. But in Tekion's hypothetical, there is no dispute that both dealers switch from *one* DMS to *one* DMS: a one-to-one ratio.

Even when viewed through the lens of Tekion's new "███████████," DMS substitutions occur in a one-to-one ratio. *See* Opp. at 10–14; Snail Daubert Reply Rpt. ¶ 13. For example, advancing yet another unpleaded market, Smith confirms that each of CDK's losses were captured by one DMS competitor. *See* Smith Opp. Rpt. ¶¶ 11, 21 & fig.1. That a dealer with more rooftops or more complex operations may be more likely to decide among fewer DMS competitors does not upend the substitution on a one-to-one basis. And Tekion points to no authority in the

8

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

Guidelines or otherwise that the one-to-one substitution must occur among some minimum number of rivals to qualify as a one-to-one substitution. As Tekion alleged at the outset of this case, when dealers switch their DMS, they go from one system to another. *E.g.*, Compl. ¶ 10. Nothing in Tekion's opposition papers reveals an alternative substitution ratio that supports a revenue share analysis.

Further, prices differ among DMS competitors even within Smith's latest unpleaded submarket. Snail Daubert Reply Rpt. at ¶ 14. Smith introduces ████████████ ████████████████████████ Smith Opp. Rpt. ¶ 11. Like ████████ ████████████ Smith proposed in his opening report, *see* Smith Rpt. ¶¶ 54, 60, this ████████████ market appears nowhere in Tekion's operative Complaint (or even its proposed First Amended Complaint). In any event, because DMS prices differ among the so-called ████████████, revenue is not a reliable indicator of market share as *Brown Shoe*, the Guidelines, and AREEDA & HOVENKAMP warn. *See* Mot. at 11–12. Units—*i.e.*, rooftop customers— is therefore the appropriate metric in this case.

Rather than contend with the undisputed fact that franchise dealers switch from one DMS to one other DMS, Tekion pivots, arguing that Smith's new ████████████ (concerning new, unpleaded markets) validates Smith's opening report's methodology. *See* Opp. at 11–14. But, as explained above, Tekion's *Daubert* Opposition does not bother to defend the Smith methodology submitted with Tekion's summary judgment opposition. Tekion does not dispute that by relying on ████████, Smith's revenue share methodology undercounts rooftops in the product market Tekion alleged, resulting in an inaccurate and inflated CDK revenue share calculation. *E.g.*, Mot. at 20; Snail Daubert Reply Rpt. at ¶ 17. Tekion does not dispute that by relying on ████████ ██, Smith's revenue share methodology overestimates competitor revenues by including revenue from products that are not part of the market Tekion pleaded. *E.g.*, Mot. at 19; Snail Daubert Reply Rpt. at ¶ 17. Tekion does not dispute that ████████████████████████ ████████████. *E.g.*, Mot. at 13; Snail Daubert Reply Rpt. at ¶ 17. Tekion does not dispute that when inputting actual rooftop figures produced in discovery into Smith's methodology,

9

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

CDK's revenue share falls to ██ %. *E.g.*, Mot. at 21; Snail Daubert Reply Rpt. at ¶ 17. And Tekion does not even dispute that CDK's revenue share would fall even lower—to ██ %, Snail Daubert Reply Rpt. at ¶ 17 n.46—if Smith had used CDK's actual per-rooftop subscription revenue for the at-issue DMS technology, *see* Snail Reply Rpt. at ¶¶ 41 & n.100, 45 & n.117.

Tekion waives away these errors as affecting the weight of Smith's analysis rather than its admissibility. Opp. at 14–18. Tekion is wrong, and none of the cases it cites support that conclusion here. Tekion's caselaw concerns motions that did not challenge the expert's methodology or the reliability of the underlying data. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026–27 (9th Cir. 2022) (finding abuse of discretion where the court "did not question… the reliability of [the expert's] methodology" but rather "his ultimate conclusions"); *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) (affirming admission of expert opinion where movant did not "challenge his general methodology"); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 364 (N.D. Cal. 2018) (rejecting challenge to expert's failure to conduct independent testing "particularly because Defendant does not dispute the reliability of the underlying data"). Unlike those movants, CDK contends both that Smith's methodology is unsound and the data he relied upon is unreliable.[2]

And here, unlike the underlying evidence in Tekion's cited cases, it is *undisputed* that ██ ██████████████████ underlying Smith's analysis are not representative of the rooftops or technology at issue in the alleged market. *See Oracle Am., Inc. v. Google Inc.*, 2011 WL 5914033, at *2 (N.D. Cal. Nov. 28, 2011) (finding challenge to interviews expert relied upon "overstates the record evidence favoring" plaintiff); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 616 (E.D. Cal. 2009) (rejecting expert challenge based on the availability of evidence the expert "could have considered but did not" where defendant made no "showing that the considered information cannot support the opinion or that other information would have raised serious issues"). The facial unreliability of the ██████ 's rooftop numbers and the ██████

---

[2] Tekion's reliance on *General Electric v. Joiner* is puzzling because there the Supreme Court held that "conclusions and methodology are not entirely distinct from one another" and *Daubert* and Rule 702 permit the district court to "conclude that there is simply too great an analytical gap between the data and the opinion offered. 522 U.S. 136, 146 (1997).

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

**PUBLIC - REDACTED**

███ 's representation of the relevant technology and the alleged market also distinguishes this case from *International Swimming*, as noted above. *Supra* at 6.

Moreover, Smith's ███████████ is defective in its own right because it is based on flawed assumptions that lead to flawed conclusions as CDK's economist expert Dr. Timothy Snail explains. *See* Snail Daubert Reply Rpt. at ¶¶ 8–11, 19–21. If anything, Smith's latest analysis demonstrates a "██████████████████████████████████████████████." *Id.* at ¶ 8.

**IV.    Tekion Fails To Demonstrate the Relevance of Smith's ███████████ " Opinions**

Tekion's attempt to save Smith's ████████ opinions only underscores their irrelevance.

Tekion contends the Court should not exclude Smith's █% revenue share opinion because the Complaint alleges a "submarket for large enterprise dealers" and this Court referenced that undefined submarket in its motion-to-dismiss order. Opp. at 6–7, 21. Tekion's lead counsel described the submarket for large enterprise dealers as one that contained six dealers. ECF 48 (Hr'g Tr. (June 26, 2025)) at 72:2–3. But Smith's █% revenue share analysis expressly concerns ████ ████████████████████████████████████ Smith Rpt. ¶ 60, which Tekion admits (as it must) contains thousands of dealer rooftops that it did not allege in the operative complaint, *see* Opp. at 21 (defending Smith's opinion based on Tekion's pending motion for leave to amend). That Tekion pleaded the existence of one submarket[3] does not excuse its failure to plead an altogether different submarket. (Indeed, the Complaint suggests, and, as noted above, Tekion's lead counsel admitted, that Tekion's undefined "submarket for large enterprise franchise dealers" includes only six publicly owned enterprise dealers, not the thousands of dealers ████ ███████. *See* Compl. ¶ 67.) And absent from Tekion's Opposition is any defense of the relevance of Smith's vague opinion that ███████████████████████████████████ ████████████████████████████ Smith Rpt. ¶ 54. Presumably this is because Smith

---

[3] In any event, Tekion did ***not*** plead that any of the alleged anticompetitive conduct resulted in the ***monopolization*** or ***attempted monopolization*** of any such large enterprise submarket.

11

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

**PUBLIC - REDACTED**

admitted at his deposition that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆—a concession Tekion's Opposition does not even attempt to controvert. ECF 140-7 (Smith Dep.) at 214:18–23.

Furthermore, the fact the Tekion generally alleged a large-enterprise-dealer submarket hurts Tekion rather than helps it. The basis for Tekion's alleged undefined large-enterprise-dealer submarket, unalleged ▆▆▆▆▆ submarket, and unalleged undefined "▆▆▆▆" submarket is dealer size based on number of rooftops. In other words, the theory underlying Tekion's pleaded and unpleaded submarkets is that the number of rooftops a dealer has leads to market segmentation. Tekion knew this before it filed suit in December 2024 yet chose not to allege any other purported submarkets until it faced a summary judgment motion. *See, e.g.*, Ex. 19 (TEKION01355132) at 4, 12 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆). Tekion cannot now defeat summary judgment with expert analysis of market share for markets Tekion neither alleged nor defined.

Unable to escape the confines of the relevant product market alleged in the Complaint, Tekion insists that Smith's "submarkets" revenue share analysis is nonetheless relevant to CDK's "competitive position" in the broader DMS market that Tekion actually pleaded. Opp. at 7, 21. But CDK's summary judgment motion does not turn on CDK's "competitive position" a year before its alleged anticompetitive conduct and the alleged anticompetitive effects of such conduct, but rather it turns on Tekion's ability to establish a genuine dispute of material fact as to CDK's alleged monopoly power. *Supra* at 7. Smith's flawed calculation of CDK's purported market share in 2022 based on unrepresentative data does not move the needle. Tekion cites no authority crediting an alleged monopolist's purported market share of an unpleaded market before the alleged Sherman Act violation occurred as evidence creating a triable issue of monopoly power.

Instead, Tekion points to the court's passing reference to co-defendant Nickelodeon's 69.9% revenue share in *Movie 1 & 2 v. United Artists Communications, Inc.*, 909 F.2d 1245 (9th Cir. 1990), as support for the relevance of Smith's ▆▆▆▆▆▆ opinions. *Movie 1 & 2* has no bearing on the relevance issue at bar for at least three reasons. *First*, Nickelodeon's market share concerned a market that was undisputedly at issue in the case, *see id.* at 1248 & n.2, 1254, whereas

12

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

Smith's undefined "████████████" and "████████████ ████████" appear nowhere in Tekion's operative pleading, Smith Rpt. ¶¶ 54, 60. *Second*, the *Movie* Court's conclusion that market share raised a triable issue of monopoly power was expressly tied to other record evidence of exclusionary power, which Tekion has failed to marshal here. 909 F.2d at 1254 (holding that market share "raise[d] an issue of fact as to the exhibitor UA's possession of monopoly power, particularly in light of the other evidence in the record of the exhibitors' power to exclude competition from the Santa Cruz market"). *Finally*, Nickelodeon's market share was not dispositive of the Section 2 claims because the Court expressly reviewed the underlying summary judgment decision "as to defendant exhibitor UA only," and UA controlled nearly 100% (96.9%) of the alleged market. *Id.* at 1253. CDK's market share, under any metric, does not even come close.

Tekion also points to the ████████████, but that does not render relevant Smith's ████████ analysis either. *See* Opp. at 22. That CDK ████ ████████████████████████████████████ ████ does not undo the fact that Tekion put "the market for DMS for franchise dealerships in the United States" at issue in this case. Compl. ¶ 63. And CDK's ████████████████████████████████████, *see* Ex. J at -664) does not support the purported "independent[] admissib[ility]" of Smith's ████████ analysis. Opp. at 7, 21. In fact, in *Rebel Oil Co. v. Atlantic Richfield Co.*, which Tekion cites without explanation (*id.* at 7), the Ninth Circuit made clear that "circumstantial evidence of market power requires that the plaintiff, at the threshold, define the relevant market." 51 F.3d 1421, 1434 (9th Cir. 1995). ("Market definition is crucial. Without a definition of the relevant market, it is impossible to determine market share."). Smith's ████████ revenue share analysis simply does not concern any relevant product market that Tekion actually alleged in its Complaint. Smith's ████████ analysis is therefore irrelevant to CDK's pending Motion for Summary Judgment and should be excluded on that basis. *See In re Google Play Store Antitrust Litig.*, 2023 WL 5532128, at *5 (N.D. Cal. Aug. 28, 2023) ("Rule 702

13

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254

of the Federal Rules of Evidence tasks a district court judge with ensuring that an expert's testimony . . . is relevant to the task at hand." (internal quotation marks omitted)).

## V.   Conclusion

CDK respectfully requests the Court exclude the opinions of Loren Smith.

Dated: July 17, 2026

**SUSMAN GODFREY L.L.P.**

By:  */s/ Vineet Bhatia*

VINEET BHATIA (*Admitted Pro Hac Vice*)
SHAWN RAYMOND (*Admitted Pro Hac Vice*)
DANIEL WILSON *(Admitted Pro Hac Vice)*
MEREDITH R. HARRISON *(Admitted Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com
dwilson@susmangodfrey.com
mharrison@susmangodfrey.com

JESSE-JUSTIN CUEVAS (SBN 307611)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
jcuevas@susmangodfrey.com

STEPHEN MORRISSEY *(Admitted Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
smorrissey@susmangodfrey.com

EVE LEVIN (*Admitted Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
elevin@susmangodfrey.com

*Attorneys for Defendant CDK Global, LLC*

14

CDK Global, LLC's Reply in Support of its
Motion to Exclude the Opinions of Loren Smith, PhD
Case No.: 3:24-cv-08879-JSC13105822v1/018254