United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEKION CORP.,<br>Plaintiff,<br>v.<br>CDK GLOBAL, LLC,<br>Defendant. | Case No. 24-cv-08879-JSC<br>**ORDER RE: MOTION FOR LEAVE TO AMEND COMPLAINT**<br>Re: Dkt. No. 98 |

Tekion Corp. ("Tekion") sues CDK Global, LLC ("CDK") for antitrust violations and tortious interference. (Dkt. No. 1.)[1] Pending before the Court is Tekion's motion for leave to file an amended complaint. (Dkt. No. 98.) Having carefully considered the parties' submissions, and with the benefit of oral argument on July 31, 2026, the Court DENIES Tekion's motion for leave to amend. Tekion has not shown good cause and diligence to justify its proposed amendments under Federal Rule of Civil Procedure 16(b).

## BACKGROUND

### I. PROPOSED AMENDED ALLEGATIONS

Auto dealership management systems ("DMS") are software products that enable dealerships to access and maintain critical data, such as "inventory management," "sales and finance," and "service and parts operations." (Dkt. No. 99-1 ¶ 1, 3.) "Franchise dealers typically spend more on their DMS than on any other software product they use." (*Id.* ¶ 3.)

#### A. DMS Market Share Allegations

Tekion initially alleged CDK's share of the DMS market for franchise dealers "is

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

approximately 60% by revenue, and its share of the submarket for large enterprise franchise dealers in the United States is even greater." (Dkt. No. 1 ¶ 2.) Tekion's 60% market share allegations relied on "estimates from Matt Gillrie, CEO and owner of the Gillrie Institute, a DMS consulting firm that helps dealerships with major vendors." (*Id.* ¶ 29.) However, on February 23, 2026, Mr. Gillrie testified in deposition "revenue had nothing to do with" his estimate, and "with the information" he now had and "with everything" he had seen, he "really do[es]n't know what the market share would be." (Dkt. No. 90-11 at 4, 5.) So, Tekion seeks to remove its allegation referencing Mr. Gillrie's 60% market share estimate.

Tekion now seeks to allege "CDK's share of the DMS market for franchise dealers in the United States exceeded 50% by revenue." (Dkt. No. 99-1 ¶ 2; *see also id.* ¶¶ 33, 72.) Tekion's proposed 50% market share estimate extrapolates from a "2022 industry report" and a court's finding CDK and Reynolds and Reynolds Company together controlled 90% of the U.S. market by vehicles sold. (*Id.* ¶ 34.)

**B. Submarket Allegations**

Tekion initially alleged CDK's share of the DMS market for franchise dealers "is approximately 60% by revenue, and its share of the submarket for large enterprise franchise dealers in the United States is even greater." (Dkt. No. 1 ¶ 2.) Tekion seeks to refine its submarket allegations to allege CDK's "share of each of the submarkets for Large Franchise Dealership Groups exceeded 60% of the market by revenues." (Dkt. No. 99-1 ¶ 2.) Tekion's proposed amended complaint redefines Large Franchise Dealership Groups as "multi-store franchise dealership groups and even larger enterprise franchise dealership groups," (*id.* ¶ 1), and adds allegations Large Franchise Dealer Groups have needs "distinct from and exceed[ing] the needs of smaller franchise dealerships," and implicate additional barriers to entry, (*id.* ¶¶ 5-8).

**C. Anti-Competitive Behavior Allegations**

Tekion previously alleged "CDK also has manufactured pretexts to force transitions to occur on timelines that risked leaving dealers without continuous DMS support, knowing the pressure that this would exert on the dealerships to remain with CDK." (Dkt. No. 1 ¶ 41.) Tekion now seeks to add a new allegation "[b]y 2024, CDK began taking the position that it would not

transfer the dealer's data to the dealer or its new DMS provider until 30 days before the dealer's contract end date with CDK, which leaves insufficient time for the dealership to test the new DMS with its data and train its workforce." (Dkt. No. 99-1 ¶ 45.) Tekion also seeks to refine its allegations related to CDK's interactions with specific dealership groups. (*Id.* ¶¶ 46, 57, 103-104, 107, 113-114, 119, 125-126, 130.)

## II. PROCEDURAL HISTORY

On December 9, 2024, Tekion sued CDK for (1) monopolization, 15 U.S.C. § 2; (2) attempted monopolization, 15 U.S.C. § 2; (3) tortious interference with contract; (4) tortious interference with prospective economic advantage; (5) violating California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (6) declaratory judgment, 28 U.S.C. § 2201. (Dkt. No. 1.) The Court denied CDK's motion to dismiss Tekion's monopolization claims. (Dkt. Nos. 23, 49.) The Court's scheduling order set an August 7, 2025 deadline to move to amend pleadings and April 27, 2026 fact discovery cut-off. (Dkt. No. 50.) The parties later stipulated to extend the fact discovery cut-off to June 26, 2026, with a later August 27, 2026 cut-off for previously noticed fact depositions or newly noticed fact depositions with good cause. (Dkt. Nos. 87, 158.) On May 15, 2026, after CDK moved for early summary judgment on Tekion's monopolization claims, (Dkt. No. 90), Tekion moved for leave to amend its complaint. (Dkt. No. 98.)

## DISCUSSION

A party seeking leave to amend its pleadings after the deadline specified in a scheduling order must first satisfy Rule 16(b)'s "good cause" standard. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (contrasting Rule 16's standard with Rule 15's "liberal amendment policy"). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "If [the moving] party was not diligent, the inquiry should end." *Id.* Although "the focus of the inquiry is upon the moving party's reasons for seeking modification," the Court may also consider "existence or degree of prejudice to the party opposing the modification." *Id.* (citation omitted). If the Court finds that Rule 16 is satisfied, it then must evaluate the request to amend under Rule

15(a)'s more liberal standard. *See id.* at 608.

**I. GOOD CAUSE UNDER RULE 16(B)**

Because Tekion moves to amend its complaint more than nine months after the August 7, 2025 deadline to amend pleadings, Rule 16(b) applies, and Tekion must demonstrate "good cause for not having amended [its] complaint before the time specified in the scheduling order expired." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). As an initial matter, CDK asks the Court to deny Tekion's motion because it assumes the Rule 15, rather than the Rule 16, standard applies. However, because Tekion's reply brief concedes Rule 16 governs, the Court will evaluate whether Tekion has shown good cause. *See Gonzalez v. Cnty. of Alameda*, No. 19-CV-07423-JSC, 2023 WL 4748834, at *1-2 (N.D. Cal. July 25, 2023) (considering good cause arguments although the moving party moved under Rule 15 rather than Rule 16).

"[T]he production of evidence including new information after a pleading amendment deadline may constitute good cause to modify the scheduling order." *Zurich Am. Ins. Co. v. Chevron USA, Inc.*, No. 24-CV-02733-JSC, 2025 WL 1282630, at *3 (N.D. Cal. May 2, 2025) (quotation marks and citations omitted). However, "[t]he good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (affirming district court's denial of motion to amend when plaintiffs knew claims may have been viable two years before the deadline to amend the pleadings). Ultimately, courts must determine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (citations omitted); *see also Johnson*, 975 F.2d at 609 (explaining the movant cannot establish good cause if they were not diligent in discovering facts and in seeking leave to amend).

Tekion argues recent discovery provides good cause to: (1) amend its overall allegations of CDK's market share, (2) refine and elaborate on its submarket allegations, and (3) include new allegations regarding CDK's anticompetitive behavior and interactions with dealership groups.

**A. Market Share Amendments**

Based on a "2022 industry report" and a court's finding CDK and Reynolds and Reynolds Company together controlled 90% of the U.S. DMS market, Tekion seeks to amend its complaint to allege CDK's market share exceeds 50% by revenue. (Dkt. No. 99-1 ¶¶ 2, 33, 34, 72.) But Tekion admits the 2022 industry report was "publicly available" and "produced to CDK on December 29, 2025." (Dkt. No. 98 at 11.) And although Tekion does not cite the court decision it relies upon, Tekion's allegation matches language in *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022), which was published on January 21, 2022. (Dkt. No. 99-1 ¶ 34.) *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d at 1042 ("CDK and Reynolds each have significant market power in the DMS market. Together they control approximately 75% of the United States market by number of dealers and approximately 90% when measured by number of vehicles sold."). So, Tekion's new allegations are based on information available when it filed its original complaint. *See Jackson*, 902 F.2d at 1388.

Tekion nevertheless contends it has good cause to amend its market share estimates based on three documents CDK produced in January 2026, which estimate CDK held approximately 50% of the DMS market. (Dkt. No. 160-8 at 21 (2022 McKinsey report estimating market share between 46-49%); Dkt. No. 160-11 at 32 (2022 Bain report estimating 60% market share among dealerships with three or more rooftops); Dkt. No. 160-9 at 15 (2022 Investment Committee Memo estimating 50% market share).) But that CDK recently produced documents with this information consistent with Tekion's proposed amendments does not provide good cause if that information was also available to Tekion before it filed its original complaint. *See Alsabur v. Autozone, Inc.*, No. CV 13-01689-KAW, 2014 WL 1340730, at *5 (N.D. Cal. Apr. 3, 2014) (denying the plaintiff leave to amend complaint because the fact "he has since obtained new evidence to bolster the new causes of action does not excuse his failure to include these allegations in previous pleadings"). So, as Tekion does not explain how the information in CDK's January 2026 productions was not previously available, Tekion has not shown good cause.

So, Tekion has not shown good cause for the above proposed market share amendments.

Tekion also seeks to eliminate the 60% market share and Gillrie citation from its complaint given its discovery in Mr. Gillrie's February 23, 2026 deposition. "CDK does not oppose this amendment." (Dkt. No. 124-3 at 10.) So, in light of CDK's non-opposition, the elimination of these allegations is permitted.

**B. Submarket Amendments**

Tekion first seeks to replace its allegations of a "large enterprise franchise dealers" submarket, (Dkt. No. 1 ¶ 2), with two submarkets for "Large Franchise Dealership Groups," including "multi-store franchise dealership groups and even larger enterprise franchise dealership groups," (Dkt. No. 99-1 ¶ 1). But CDK presents Tekion documents from October 9, 2024 in which Tekion—relying on a 2023 Automative News article—segmented dealerships into enterprise and commercial dealerships based on the number of stores. (Dkt. No. 126-7 (2023 Automative News article); Dkt. No. 125-5 (Tekion spreadsheet grouping dealerships based on sizes listed in article); Dkt. No. 125-6 at 3-4 (deposition testimony discussing how Tekion sorted dealerships by size and grouped them into enterprise and commercial dealerships).) Tekion does not respond to CDK's argument these documents demonstrate Tekion had some basis to develop its newly proposed submarkets before filing its initial complaint.

Instead, Tekion contends even if it had a general understanding of the submarkets, it could not precisely refine them into "multi-store franchise dealership groups" and "even larger enterprise franchise dealership groups" until receiving new discovery. But the new discovery Tekion cites does not identify those submarkets. For example, Tekion cites a 2022 Bain report estimating CDK held more than 60% of the market among the Top 6 dealerships, Large dealerships with ten or more rooftops, and Medium dealerships with three to nine rooftops. (Dkt. No. 160-11 at 32.) Similarly, CDK's 2023 Lender Presentation segments CDK's customers between those with one or two rooftops and those with three or more rooftops. (Dkt. No. 124-5 at 21.) But because these segments do not align with Tekion's new allegations, Tekion has not shown how the newly discovered documents would justify Tekion's amended submarkets. Tekion also does not explain how a 2022 McKinsey report stating few DMS providers compete for large dealerships, (Dkt. No. 160-8 at 21), and May 12, 2026 deposition testimony indicating CDK segments its dealers based

on size, (Dkt. No. 160-5 at 4), justify Tekion's amendment. Because Tekion does not explain how new discovery explains amending its submarket allegations from "large enterprise franchise dealers" to "multi-store franchise dealership groups and even larger enterprise franchise dealership groups," Tekion has not shown good cause to amend.

Tekion also seeks leave to amend its submarket allegations because new discovery "shows that larger dealerships face higher DMS switching costs, a barrier to entry." (Dkt. No. 160-1 at 11.) Tekion argues it only discovered this fact after receiving the 2022 McKinsey report, which states "[a]s contract size increases, [CDK] appears to successfully negotiate higher cost increases, benefiting from the stickiness of the platform," (Dkt. No. 160-8 at 26), and an internal CDK email asking whether "smaller dealers [are] getting better [write-downs] as switching is easier for them," (Dkt. No. 160-13 at 2). But Tekion's original complaint alleged switching costs were particularly high for "multi-dealer groups with more complex operations." (Dkt. No. 1 ¶ 63.) Given Tekion had some basis to allege switching costs were higher for multi-dealer groups when it filed its original complaint, it has not shown new evidence provides good cause for amendment.

The cases Tekion cites to argue the Court should grant leave to amend its market definitions are not applicable. As to *Giuliano v. SanDisk Corp.*, No. C 10-02787 SBA, 2014 WL 4685012 (N.D. Cal. Sept. 19, 2014), Tekion relies on the court's Rule 15 analysis, rather than its Rule 16 analysis. *Id.* at *4. Otherwise, Tekion cites cases expressing the difficulty of evaluating product market definitions at the motion to dismiss stage. *See DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2018 WL 10247483, at *6 (N.D. Cal. Sept. 24, 2018) ("Defining the appropriate product market is unquestionably one of the thorniest questions of anti-trust law."); *Delano Farms Co. v. California Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1176 (E.D. Cal. 2009) ("[B]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." (cleaned up)), *aff'd*, 655 F.3d 1337 (Fed. Cir. 2011); *cf. Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2008 WL 73689, at *10 n.13 (N.D. Cal. Jan. 5, 2008) (resolving summary judgment and *Daubert* motions and noting "[e]stablishing market definition in this case likely requires expert testimony"). These cases do not support a good cause finding here.

United States District Court
Northern District of California

So, because Tekion has not shown new discovery provides good cause, the Court does not grant Tekion leave to amend its submarket allegations.

**C. Amendments Related to CDK's Anticompetitive Behavior**

Tekion first seeks to add an allegation:

> By 2024, CDK began taking the position that it would not transfer the dealer's data to the dealer or its new DMS provider until 30 days before the dealer's contract end date with CDK, which leaves insufficient time for the dealership to test the new DMS with its data and train its workforce. Even CDK's own employees expressed concern that a 30-day implementation period for data coming to CDK would [] create implementation challenges.

(Dkt. No. 99-1 ¶ 45.) According to Tekion, "CDK does not in fact show that Tekion knew about the existence of any such *policy*, let alone about its details, until into discovery." (Dkt. No. 160-1 at 14.) But Tekion ignores CDK's citation to a July 31, 2024 email from Tekion to a dealership cancelling its CDK services, stating "as a heads up, a few months ago CDK implemented a policy where they do not release data for dealers who are MTM until 30 days prior to their contract end date." (Dkt. No. 125-4 at 2.) Instead, Tekion cites an internal CDK email produced in April 2026 as the first instance in which Tekion learned "CDK's own employees expressed concerns" about such a policy. (Dkt. No. 160-14 at 2.) But even if Tekion first learned of CDK employees' concerns about the policy in April 2026, the July 31, 2024 email shows Tekion was aware of the policy itself before filing its original complaint. So, Tekion has not shown good cause to amend its complaint to add new allegations about the CDK policy.

Otherwise, Tekion seeks to amend several other paragraphs of its complaint to "refine[] allegations relating to specific dealership groups." (Dkt. No. 98 at 9 (citing Dkt. No. 99-1 ¶¶ 46, 57, 103, 104, 107, 113, 114, 119, 125, 126, 130).) However, as support for these amendments, Tekion only argues its changes to paragraph 46 "account in part for the deposition testimony of a Doral representative on May 14, 2026, *one day* before Tekion filed for leave to amend," and its changes to paragraph 57 are "based largely on information learned during document discovery from and depositions of the dealers, all of which occurred within weeks of Tekion's motion." (Dkt. No. 160-1 at 13.) Absent any detail about the information learned during document discovery and in depositions with the dealers, Tekion has not shown new discovery provides good

United States District Court
Northern District of California

cause to amend these allegations.

So, Tekion has not shown good cause for amending its allegations related to CDK's anticompetitive behavior and dealer interactions.

## II. PREJUDICE TO CDK

The Court, in its discretion, also denies Tekion leave to amend because to do so would prejudice CDK. "[A] court may take into account any prejudice to the party opposing modification of the scheduling order." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 737; *see also Coleman*, 232 F.3d at 1295 (explaining "although [prejudice is] not required under Rule 16(b)," it may "suppl[y] an additional reason for denying the motion"). "Putting the [opposing party] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Jackson*, 902 F.2d at 1388 (quotation marks and citation omitted); *see also Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming district court's denial of motion to amend filed two weeks before discovery deadline given undue delay and prejudice when "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings").

Granting Tekion's belated amendment will delay the litigation and require the Court to extend the fact discovery cut-off, thereby prejudicing CDK. Despite Tekion's insistence existing discovery should suffice, introducing new market and submarket allegations would undoubtably require new fact discovery by both Tekion and CDK, and require the parties to revise any expert discovery to date. Tekion's amendment would also moot—or at least drastically affect—CDK's early motion for summary judgment, which the parties have already briefed.

So, the inevitable prejudice to CDK provides an additional rationale for denying Tekion's motion under Rule 16(b). And as Tekion has not met the Rule 16(b) requirement, a Rule 15(a) analysis is not necessary. *See Johnson*, 975 F.2d at 608-09.

## CONCLUSION

For the reasons stated above, the Court DENIES Tekion's motion for leave to file an amended complaint.

Regarding CDK's pending motion for summary judgment, Tekion shall file a supplemental Rule 56(d) opposition by **August 4, 2026**. CDK shall file any response by **August 18, 2026**. The Court will hold oral argument on that motion on **October 1, 2026** at 10:00 a.m. In addition, as discussed at the July 31, 2026 hearing, the Court stays expert discovery deadlines pending resolution of CDK's motion for summary judgment.

By **August 12, 2026**, the parties shall file a joint motion proposing redactions, if any, to this Order.

This Order disposes of Docket No. 98.

**IT IS SO ORDERED.**

Dated: July 31, 2026

JACQUELINE SCOTT CORLEY
United States District Judge